**USV PHARMACEUTICAL CORPORA·
TION, Petitioner,**

v.

**SECRETARY OF HEALTH, EDUCA·
TION & WELFARE and Commission·
er of Food & Drugs, Respondents.**

No. 24900.

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 17, 1971.

Decided Aug. 14, 1972.

Mr. Joel E. Hoffman, Washington, D. C., with whom Messrs. Robert L. Wald, Stephen M. Truitt and Miss Selma M. Levine, Washington, D. C., were on the brief, for petitioners.

Mr. Howard E. Epstein, Atty., Dept. of Justice, with whom Messrs. John L. Murphy, Chief, Administrative Regulations Section, Dept. of Justice, William W. Goodrich, Asst. Gen. Counsel, and Joanne S. Sisk, Atty., Dept. of Health, Education and Welfare, were on the brief, for respondent.

Before ROBINSON, ROBB and WILKEY, Circuit Judges.

ROBB, Circuit Judge:

The petitioner, USV Pharmaceutical Corporation (USV), is engaged in the manufacture and marketing of a line of citrus bioflavonoid drugs known as CVP.[1] The petitioner challenges an order of the Commissioner of Food and Drugs [2] withdrawing approval of three New Drug Applications held by USV for these drugs. The order was issued pursuant to section 505(e) of the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 355(e) (1970), and its effect is to make the interstate distribution of the drug illegal. 21 U.S.C. §§ 331, 355. The Commissioner says that his order is supported by his finding that there is a lack of substantial evidence, as that term is defined in the Act, 21 U.S.C. § 355(d), that the drugs will have the effectiveness claimed for them. The petitioner counters that the order is invalid because of substantial defects in the proceedings upon which it is based. Reviewing the matter pursuant to 21 U.S.C. § 355(h), we are constrained to agree with the petitioner.

Under the statutory scheme the Commissioner approves or disapproves a drug upon the basis of what is known as a New Drug Application (NDA) submitted by the person proposing to introduce the drug into interstate commerce. In

---

1. CVP is the trade name under which the petitioner markets drugs containing citrus flavonoid compound, a derivative of citrus fruit pulp and peel, and vitamin C, with and without vitamin K. CVP is a bioflavonoid, a generic term which may refer not only to citrus flavonoid compounds but also to any of its separate components. These drugs are recommended by the petitioner for the control of abnormal capillary permeability and a number of serious blood disorders.

2. The Commissioner acted under authority delegated by the Secretary of Health, Education and Welfare. 21 C.F.R. § 2.120 (1971).

1956 and 1957 three NDAs for the petitioner's CVP drugs were approved by the Commissioner pursuant to the Federal Food, Drug and Cosmetic Act of 1938, 52 Stat. 1041, 1052, 21 U.S.C.A. §§ 321(p), 355 (1961). Under this statute drug approval was granted if the sponsor submitted proof establishing that the drug was safe for its intended use. No determination of the drug's effectiveness for its prescribed uses was required. In 1962, however, the relevant sections of the statute were amended to require a showing by a drug sponsor' that a drug was both safe and effective for its prescribed uses. Act of October 10, 1962, 76 Stat. 781–783, 784, 785, 21 U.S.C. § 355. Among other things the new Act provided that:

> The Secretary shall, after due notice and opportunity for hearing to the applicant, withdraw approval of an application with respect to any drug under this section if the Secretary finds * * * (3) on the basis of new information before him with respect to such drug, evaluated together with the evidence available to him when the application was approved, that there is a lack of substantial evidence that the drug will have the effect it purports or is represented to have under the conditions of use prescribed, recommended, or suggested in the labeling thereof. . . . Any order under this subsection shall state the findings upon which it is based. 21 U.S.C. § 355(e).

The Act defined the term "substantial evidence" as follows:

> As used in this subsection and subsection (e) of this section, the term "substantial evidence" means evidence consisting of adequate and well-controlled investigations, including clinical investigations, by experts qualified by scientific training and experience to evaluate the effectiveness of the drug involved, on the basis of which it could fairly and responsibly be concluded by such experts that the drug will have the effect it purports or is represented to have under the condi-

tions of use prescribed, recommended, or suggested in the labeling or proposed labeling thereof. 21 U.S.C. § 355(d).

The proceedings to withdraw approval of the petitioner's CVP drug applications were under 21 U.S.C. § 355(e).

By notice in the Federal Register on July 9, 1966 the Commissioner announced that the National Academy of Sciences—National Research Council (NAS–NRC) had "agreed to assist the Food and Drug Administration in its review of the claims of effectiveness for drugs cleared through the new-drug procedures from 1938 until October 10, 1962." 31 Fed.Reg. 9426. The notice directed holders of such approved new-drug applications to submit certain specified data and material to NAS–NRC, in order to

> facilitate this review and a determination of whether there may be ground for invoking section 505(e) of the Federal Food, Drug, and Cosmetic Act, and to provide each holder of such an approved new-drug application an opportunity to present for the consideration of the reviewing experts the best data available to support the medical claims. . . .

Among the materials to be submitted were:

> f. Current labels and package inserts (attach 10 copies of each to original of form; 1 copy of each to duplicate).
>
> g. List of literature references most pertinent to an evaluation of the effectiveness of the drug for the purposes for which it is offered in the label, package insert, or brochure. Approximately 5 to 10 key references, if available (attach 10 copies of the list to original of form and 1 copy to duplicate).
>
> h. Unpublished articles or other data pertinent to an evaluation of the claims (one copy only; attach to duplicate).

Responding to the Commissioner's notice of July 9, 1966 USV submitted two

bibliographies, one containing nine references, the other sixteen. This submission was reviewed by two NAS–NRC panels which in due course reported to the Commissioner. The complete report of the Panel on Drugs Used in Hematologic Disorders was as follows:

C.V.P. with VITAMIN K
NDA 9965
LOG 734

Panel on Drugs Used in Hematologic Disorders

INDICATIONS

I. As a supplementary source of bioflavonoids, ascorbic acid, and menadione.

EVALUATION: Ineffective.

COMMENTS: The label correctly states that the dietary need for these agents has not been established, in agreement with Burns.

DOCUMENTATION:

1. Burns, J. J. Water-soluble vitamins; II. ascorbic acid (vitamin C), pp. 1673–1680. In L. S. Goodman and A. Gilman, Eds. The Pharmacological Basis of Therapeutics. (3rd ed.) New York: The MacMillan Co., 1965.

Approved by William [illegible]
Chairman

So far as material the report of the Panel on Drugs Used in Metabolic Disorders was as follows:

DUO–C.V.P.
NDA 9965
LOG 733

Panel on Drugs Used in Metabolic Disorders

INDICATIONS

None.

GENERAL COMMENTS

I. There is no package insert, but just a label indicating that this is a "supplementary source of bioflavonoids and ascorbic acid." There is no definite claim for therapeutic use and a statement on the label admits that "the need for bioflavonoids in human nutrition has not been established." However, the inference is that there is indeed a need for such a product. The references support this inference, in that everything from threatened abortion to bleeding gums is reported to have responded. The use of these materials as hemostatic agents for capillary fragility is felt to be unjustifiable and not proved. The Panel recommends that there should be a clear statement as to the use of this preparation.

II. The Panel finds that the term "minimum daily adult" requirement is meaningless because variations in nutritional needs depend on the health, sex, age, and physical activity of the individual. The term "dietary allowances" is preferred.

III. See the general statement on multiple-vitamin preparations.

Approved by D. H. Nelson
Chairman

On January 23, 1968 the Commissioner announced that the Food and Drug Administration, having received the NAS–NRC report, "has considered the report and has concluded on the basis of the report and its own evaluations that there is no evidence that * * * bioflavonoids are effective for use in man for any condition." 33 Fed.Reg. 818. The Commissioner noted that lack of substantial evidence of effectiveness of a drug was a basis for withdrawing approval of a new-drug application, and that the Commissioner intended "to publish a notice of opportunity for a hearing on a proposal to withdraw approval" of new-drug applications for the bioflavonoids. The Commissioner stated, however, that before taking such action he invited all interested holders of new-drug applications to attend a meeting on January 31, 1968 "to discuss the procedural matters involved in the proposed action * * * and to attempt to identify and resolve problems that may be anticipated as a result of the actions to be taken." The meeting was held on January 31, 1968 at which time the Food and Drug Administration again invited the submission of additional scientific and medical information that might be pertinent to the question of the effectiveness of the drugs. In response, USV submitted certain additional information in the form of reports and reprints.

By notice published in the Federal Register on July 10, 1968, 33 Fed.Reg. 9908, the Commissioner announced that "[t]he additional information received, considered together with other information available, did not provide substantial evidence of effectiveness of such drugs for use in man for any condition." Accordingly, the Commissioner gave notice that he proposed to withdraw approval on the ground that there was a lack of substantial evidence that any bioflavonoids had the effect which the drugs purported or were represented to have under the conditions for use prescribed, recommended or suggested in the labeling thereof, or that such articles alone, or as added components with other drugs, were effective for use in man in any condition. Continuing, the notice stated that

"the Commissioner will give each applicant and any interested person who would be adversely affected by an order withdrawing such approval an opportunity for a hearing at which time such persons may produce evidence and arguments to show why approval of any new-drug application listed herein should not be withdrawn." 33 Fed.Reg. 9909.

On August 6, 1968 the petitioner filed an action in the United States District Court for the Eastern District of Virginia seeking a declaratory judgment that none of its products named in the Commissioner's notice was a new drug within the meaning of the Federal Food, Drug and Cosmetic Act, as amended. USV Pharmaceutical Corp. v. Richardson, Civ.No. 4915–A (E.D.Va.).[3] On the following day, August 7, the petitioner requested the Commission to stay all further proceedings under the Commissioner's notice of July 10, 1968, pending the disposition of the declaratory judgment action. In addition to this request the petitioner on August 9, 1968 requested a hearing before the Commissioner on his proposal to withdraw approval of the petitioner's new-drug applications. On August 16 the Commissioner refused to stay the proceedings, stating:

> The National Academy of Science-National Research Council reported that there is no evidence that bioflavonoids are effective for use in man for any condition. This proceeding was initiated to provide an opportunity, to all interested parties, for a hearing on the proposal. This proceeding will afford you both an administrative hearing and an opportunity for judicial review if withdrawal of the new drug applications follow [sic].

The regulations in force in 1968 provided that upon timely request for a hearing "a hearing examiner will be named and he shall issue a written notice of the time and place at which the hearing shall commence. . . ." The date of the hearing was required to be not more than 120 days after the date of the Commissioner's notice of proposed withdrawal of approval "unless the hearing examiner and the applicant otherwise agree." 21 C.F.R. § 130.14 (1968). The Commissioner, however, did not name a hearing examiner and no further action was taken in the administrative proceedings until 1970.

On May 8, 1970 the Commissioner revised the regulations governing hearings in NDA revocation proceedings. The revised regulations provide that a request for a hearing must state the reason why an NDA should not be withdrawn, "together with a well-organized and full-factual analysis of the clinical and other investigational data [the applicant] is prepared to prove" and setting forth "specific facts showing that there is a genuine and substantial issue of fact that requires a hearing." The regulations further provide that:

> When it clearly appears from the data in the application and from the reasons and factual analysis in the request for the hearing that there is no genuine and substantial issue of fact which precludes the refusal to approve the application or the withdrawal of approval of the application, e.g., no adequate and well-controlled clinical investigations to support the claims of effectiveness have been identified, the Commissioner will enter an order on this data, making findings and conclusions on such data. 35 Fed.Reg. 7252 (1970); 21 C.F.R. § 130.14(b).

On July 7, 1970 the Commissioner wrote to the petitioner referring to the Commissioner's notice of proposed withdrawal published July 10, 1968 (33 Fed.

---

3. After a hearing the District Court held, on April 1, 1971, that USV's bioflavonoid products were not "new drugs" within the statutory definition. On May 24, 1972 the Circuit Court of Appeals for the Fourth Circuit reversed, rejected the claim for exemption, and directed the district court to enter judgment for the defendants. USV Pharmaceutical Corp. v. Richardson, 461 F.2d 223 (4th Cir. 1972).

Reg. 9908), the petitioner's request for a hearing dated August 9, 1968, and the revised regulations of May 8, 1970. The letter continued:

> The May 8 regulations are applicable to any request for a hearing. You should amend your request for a hearing to comply with those regulations, i.e., by submitting a well-organized and full-factual analysis of the clinical and other investigational data you are prepared to prove in a hearing, setting forth specific facts showing that there is a genuine and substantial issue of fact that requires a hearing.

Replying to the Commissioner's letter of July 7, the petitioner by letter dated August 7 requested a stay of all further proceedings before the Commissioner because (1) the petitioner's action for declaratory judgment in the Eastern District of Virginia, in which the petitioner asserted that its drugs were not "new drugs", was scheduled for trial on October 23, 1970, and (2) the validity of the revised regulations of May 8 was under challenge in the United States District Court for the District of Delaware.[4] In conclusion, USV requested "that if a stay is denied the company be given at least thirty days from receipt of notice of the denial to file a further response to your letters of July 7."

On October 14, 1970 the Commissioner replied to the petitioner's letter of August 7. The Commissioner noted that his letter of July 7 "suggested the request for a hearing be amended within 30 days from receipt of that letter" but that no amendment had been received.

Accordingly, [said the Commissioner,] we conclude that no useful purpose will be served by further delaying the processing of a final order to withdraw approval of the subject new drug applications. The pending litigation in the United States District Court for the Eastern District of Virginia and the United States District Court for the District of Delaware do not provide sufficient grounds to further delay these proceedings.

> Your request for a 30-day extension, in the event of our denial of a stay, is also denied.

On October 15, 1970 the Commissioner issued an order withdrawing the petitioner's NDAs. The ground of the order was stated to be that the Commissioner:

> finds that on the basis of new information before him with respect to each of said drugs, evaluated together with the evidence available to him when each application was approved, there is a lack of substantial evidence that each of the drugs will have the effect it purports or is represented to have under the conditions of use prescribed, recommended, or suggested in the labeling thereof. 35 Fed.Reg. 16332.

We think the procedures followed by the Commissioner were fundamentally defective.

 The Commissioner acted pursuant to 21 C.F.R. § 130.14, the regulation establishing a summary judgment procedure for the Food and Drug Administration.[5] This regulation is

---

4. The Commissioner's regulations and standards were challenged by other litigants in the federal courts. *See* Upjohn Co. v. Finch, 422 F.2d 944 (6th Cir. 1970); Pharmaceutical Manufacturers Ass'n v. Finch, 307 F.Supp. 858 (D.Del. 1970); Pharmaceutical Manufacturers Ass'n v. Richardson, 318 F.Supp. 301 (D.Del.1970). The challenges were unsuccessful.

5. 21 U.S.C. § 355(e) grants applicants the right to "due notice and opportunity for

hearing" prior to withdrawal of approval to market new drugs in interstate commerce. We do not construe this section as precluding the use of summary judgment in appropriate circumstances, but it does restrict the application of that procedure to cases in which no material factual issue is presented and a hearing would be a hollow formality. *See* Pennsylvania Gas and Water Co. v. Federal Power Comm'n, 150 U.S.App.D.C. 151, 463 F.2d 1242 (decided May 2, 1972); *cf.* Fidelity & Deposit Co. v. United

modeled after Rule 56 of the Federal Rules of Civil Procedure, the summary judgment rule of the federal district courts. As counsel for the government stated at oral argument, the agency's procedure is analogous to the procedure under Rule 56. A vital distinction, however, is that the Commissioner here was not an impartial arbiter of the contentions of opposing parties, but was himself the moving party undertaking to support his own proposed order. The petitioner's applications had been approved, pursuant to 21 U.S.C.A. § 355(b) (1961), but now, under 21 U.S.C. § 355(e), the Commissioner proposed, without a hearing, to withdraw that approval on the basis of a new standard and new information, together with the evidence available when approval was originally granted. In this situation we think it was incumbent upon the Commissioner, before calling upon the petitioner for additional evidence establishing a right to a hearing, to state facts and reasons showing at least prima facie that the evidence before him raised no material issue of fact which would justify a hearing. This view of the Commissioner's burden is consistent with the practice under Rule 56 of the Federal Rules of Civil Procedure. Under that rule the moving party has the burden of presenting evidence that establishes his right to summary judgment as a matter of law; and he may not, by the bare assertion that he is entitled to summary judgment, shift to his opponent the burden of establishing the contrary. Evers v. Buxbaum, 102 U.S.App.D.C. 334, 253 F.2d 356 (1958); Washington Post Co. v. Keogh, 125 U.S.App.D.C. 32, 365 F.2d 965 (1966).

■■ At no stage of this proceeding did the Commissioner present anything approaching a prima facie showing that there was no genuine and substantial issue of fact requiring a hearing. The reports of the NAS–NRC panels which we have quoted, and upon which the Commissioner relied in his notice of January 23, 1968, were cryptic and conclusory, without any statement of supporting facts. The Commissioner's notice of January 23, 1968 and his notice of July 10, 1968 parroted the language of the statute without reference to any evidence. In short, at no time did the Commissioner set forth the facts and reasons upon which he relied in reaching his conclusion that no material issue of fact existed. We think that such an application of the Commissioner's summary judgment rule is not in harmony with the principle of the rule and is fundamentally unsound and unfair. Before calling upon the petitioner to answer, the Commissioner, as the moving party, had an obligation to present at least a prima facie case for denial of a hearing. Cf. Greene v. McElroy, 360 U.S. 474, 496, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959); Southern Railway Co. v. Virginia ex rel. Shirley, 290 U.S. 190, 197, 54 S.Ct. 148, 78 L.Ed. 260 (1933). Only after such a presentation could the Commissioner fairly impose upon the petitioner the heavy sanctions of 21 C.F.R. § 130.14.

By what we have said we do not intend to require a wholesale incorporation of the practice under the Federal Rules of Civil Procedure into administrative summary judgment proceedings; but the limited steps we have outlined are basic to administrative fairness.

■ The petitioner attacks the Commissioner's final order of withdrawal upon the further ground that it is not supported by adequate findings and conclusions. We agree. Both the statute, 21 U.S.C. § 355(e), and the Commissioner's own regulation, 21 C.F.R. § 130.14(b), require the Commissioner to state

States, 187 U.S. 315, 320, 23 S.Ct. 120, 47 L.Ed. 194 (1902); 6 J. Moore, Federal Practice § 56.06, at 2075–80 (2d ed. 1966).
*See* Gellhorn & Robinson, Summary Judgment in Administrative Adjudica-

tion, 84 Harv.L.Rev. 612 (1970), for a discussion of the use of summary procedures in administrative adjudications.

the findings upon which his order is based, and the summary judgment procedure did not excuse the Commissioner from that requirement. *Cf.* NLRB v. Clement-Blythe Companies, 415 F.2d 78, 81, 82 (4th Cir. 1969). Yet the Commissioner's order of October 15, 1970 merely tracks the language of the statute, stating in conclusory terms that there is a lack of substantial evidence that the petitioner's drugs are effective. As we have frequently emphasized, findings of fact are not mere procedural niceties; they are essential to the effective review of administrative decisions. Without findings of fact a reviewing court is unable to determine whether the decision reached by an administrative agency follows as a matter of law from the facts stated as its basis, and whether the facts so found have any substantial support in the evidence. Saginaw Broadcasting Co. v. FCC, 68 App.D.C. 282, 287, 96 F.2d 554, 559, cert. denied, Gross v. Saginaw Broadcasting Co., 305 U.S. 613, 59 S.Ct. 72, 83 L.Ed. 391 (1938); National Geographic Society v. District Unemployment Compensation Board, 141 U.S.App.D.C. 313, 438 F.2d 154 (1970); Environmental Defense Fund, Inc. v. Hardin, 138 U.S.App.D.C. 391, 397–398, 428 F.2d 1093, 1099–1100 (1970); Greater Boston Television Corp. v. FCC, 143 U.S.App.D.C. 383, 393, 444 F.2d 841, 851 (1970), cert. denied, 403 U.S. 923, 91 S.Ct. 2233, 29 L. Ed.2d 701 (1971). Here we are left completely in the dark as to the facts and the evidence upon which the Commissioner based his judgment. Such a record cannot support the Commissioner's order.

 Finally, the petitioner contends that the Commissioner acted arbitrarily by denying the petitioner's request for a stay and immediately thereafter entering a final order of withdrawal. Again, we agree. The request for a stay was not unreasonable and there is no suggestion that it was made in bad faith. In light of the leisurely if not dilatory pace at which the Commissioner had moved in the litigation—his failure to name a hearing examiner in response to the petitioner's demand of August 9, 1968, and his delay of more than two months in responding to the petitioner's August 7, 1970 request for a stay—the Commissioner's precipitous and summary action was arbitrary. In the circumstances we think petitioner was entitled to an opportunity to submit additional evidence or plead over when its request for a stay was denied. The Commissioner's explanation for his action, that further delay would serve no useful purpose, was a mere administrative ukase and amounted to no explanation at all.

We intimate no views as to the merits of this controversy over the effectiveness of the petitioner's drugs; the Commissioner's conclusions may well prove to be correct. We hold only that before entering his order he must conform to the requirements of administrative due process. This we think he has failed to do.

We set aside the Commissioner's order and remand the case for further proceedings in conformity with this opinion.

It is so ordered.