SIERRA CLUB, Plaintiff-Appellant,

v.

INDIANA–KENTUCKY ELECTRIC COR-
PORATION and Indiana & Michigan
Electric Company, Defendant-Appellee.

Nos. 81–1822, 81–2173.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 1, 1981.

Decided Aug. 30, 1983.

Frederick S. Middleton, III, Washington, D.C., for plaintiff-appellant.

Bryan G. Tabler, Barnes, Hickam, Pantzer & Boyd, Indianapolis, Ind., for defendant-appellee.

Before WOOD, Circuit Judge, FAIRCHILD, Senior Circuit Judge, and ROSZKOWSKI, District Judge.*

ROSZKOWSKI, District Judge.

This consolidated appeal arises under the Clean Air Act Amendments of 1970. The issue is whether a federal court may enforce an implementation plan provision which was adopted by the state to meet federal air quality standards, subsequently was approved by the Environmental Protection Agency, but thereafter was invalidated by a court of the adopting state on state law procedural grounds. The district courts below held that such a provision is not enforceable. For the reasons herein stated, this court affirms those decisions.

## I. BACKGROUND

The Clean Air Act Amendments of 1970,[1] described by the Supreme Court as "a drastic remedy to . . . (the) otherwise uncheckable problem of air pollution," *Union Electric Co. v. EPA,* 427 U.S. 246, 256, 96 S.Ct. 2518, 2525, 49 L.Ed.2d 474 (1976), empowered the EPA to set national primary and secondary ambient air quality standards. 42 U.S.C. § 7409.[2] Compliance with the standards were then to be implemented through state plans. Each state, "after reasonable notice and public hearings, [was to] adopt and submit to the Administrator, within nine months after the promulgation of a national primary ambient air quality standard . . . for any pollutant, a plan which provides for implementation, maintenance, and enforcement of such primary standard in each air quality control region . . . within such state." 42 U.S.C. § 7410. The Act essentially gave the states the initial opportunity to develop a workable and equitable implementation for meeting national standards within the state. In the event the state was unable to present an implementation

---

\* The Honorable Stanley J. Roszkowski, Judge of the United States District Court for the Northern District of Illinois, is sitting by designation.

1. The 1970 legislation was substantially amended in 1977. Certain areas had failed to achieve compliance with the original statutory deadlines, prompting Congress to amend the Clean Air Act in 1977 to establish new deadlines and to detail a state and local planning process employing strict federal review to insure that new deadlines would be met. P.L. 95–95, 91 Stat. 685 (1977). The Amended Act directed the States to submit to the EPA by December 5, 1977 a list of nonattainment areas for all pollutants for which the agency had set primary standards. 42 U.S.C. § 7407(d)(1). Within 60 days thereafter EPA was to promulgate these lists with any modifications it deemed necessary. 42 U.S.C. § 7407(d)(2). The States were then required to develop implementation plans by January 1, 1979 for attaining the primary standards by December 31, 1982. P.L. 95–95, § 129(b), 42 U.S.C. §§ 7410, 7502. The post–1970 Amendments are not at issue in this case.

2. 42 U.S.C. § 7409(a) provides:

(1) The Administrator—
(A) within 30 days after the date of enactment of the Clean Air Amendments of 1970 [enacted Dec. 31, 1970], shall publish proposed regulations prescribing a national primary ambient air quality standard for each air pollutant for which air quality criteria have been issued prior to such date of enactment; and
(B) after a reasonable time for interested persons to submit written comments thereon (but no later than 90 days after the initial publication of such proposed standards) shall by regulation promulgate such proposed national primary and secondary ambient air quality standards with such modifications as he deems appropriate.
(2) With respect to any air pollutant for which air quality criteria are issued after the date of enactment of the Clean Air Amendments of 1970 [enacted Dec. 31, 1970], the Administrator shall publish, simultaneously with the issuance of such criteria and information, proposed national primary and secondary ambient air quality standards for any such pollutant. The procedure provided for in paragraph (1)(B) of this subsection shall apply to the promulgation of such standards.

plan which met statutory requirements, the EPA administrator was authorized to develop its own implementation plan for the state. 42 U.S.C. § 7410(c).[3]

On April 11, 1972, the State of Indiana submitted to EPA an implementation plan that included provision APC–13, which was designed to regulate sulfur dioxide emissions. On May 31, 1972, EPA approved APC–13 in part and rejected APC–13 in part.[4] The State of Indiana revised APC–13 to conform to EPA's objections and submitted the revised version to the EPA on September 15, 1972. The EPA accepted the revised APC–13 and revoked its prior disapproval.

A group of Indiana utilities, including one of the appellees now before us, chose to challenge APC–13 in both the federal and state courts.

The federal court challenge reached this court in 1975. In *Indiana & Michigan Electric Co. v. EPA,* 509 F.2d 839 (7th Cir.1975), the utilities unsuccessfully challenged the EPA Administrator's approval of the Indiana implementation plan. Among the challenges raised was a due process objection. In rejecting the claim, this court held that the procedural scheme prescribed by the Act provided "adequate opportunity for the submission of views and for judicial appeal." *Id.* at 847. We observed that the utilities had "a right to challenge the rea-

sonableness of state plans in state courts, and if part of a state implementation plan is held invalid by a state court, the state would have to revise that part." 509 F.2d at 847. It was further noted, that "should the state fail [to revise the invalidated provision] . . . the Administrator must propose and promulgate a revision." *Id.* We reminded the utilities that whether the state or the Administrator made the revisions, "[i]n either case a hearing, or at least an opportunity for a hearing is a prerequisite to adoption of the new regulation." *Id.*

As was suggested in *Indiana & Michigan Electric Co. v. EPA,* the utilities proceeded with their procedural challenges to APC–13 in state court. On November 10, 1975, the Circuit Court for Marion County held APC–13 invalid. Four years later, the Indiana Court of Appeals for the Second District affirmed the Circuit Court's invalidation on the procedural ground that the state officer who presided over the hearing had failed to submit written findings to the Indiana Environmental Management Board. *Indiana Environmental Management Board v. Indiana-Kentucky Electric Corp.,* 393 N.E.2d 213, 222 (Ind.App.1979).

Despite the state court ruling, the Sierra Club brought suits to enforce APC–13 against alleged polluters. In Case No. 81–1822, the Sierra Club sought to enforce APC–13 against the Indiana-Kentucky Electric Corporation. In Case No. 81–2173,

**3.** 42 U.S.C. § 7410(c)(1) provides in pertinent part:

The Administrator shall, after consideration of any State hearing record, promptly prepare and publish proposed regulations setting forth an implementation plan, or portion thereof, for a State if—

(A) the State fails to submit an implementation plan which meets the requirements of this section.

(B) the plan, or any portion thereof, submitted for such State is determined by the Administrator not to be in accordance with the requirements of this section, or

(C) the State fails, within 60 days after notification by the Administrator or such longer period as he may prescribe, to revise an implementation plan as required pursuant to a provision of its plan referred to in subsection (a)(2)(H).

If such State held no public hearing associated with respect to such plan (or revision

thereof), the Administrator shall provide opportunity for such hearing within such State on any proposed regulation. The Administrator shall, within six months after the date required for submission of such plan (or revision thereof), promulgate any such regulation unless, prior to such promulgation, such State has adopted and submitted a plan (or revision) which the Administrator determines to be in accordance with the requirements of this section.

**4.** Under 42 U.S.C. § 7410(a)(2), the EPA has the authority to partially approve the original implementation plan submitted by the state. *Public Service Co. of Indiana v. U.S.E.P.A.,* 682 F.2d 626, 632 (7th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 762, 74 L.Ed.2d 977 (1983). EPA may also partially approve subsequent revisions to the plan. *Id.*

the Sierra Club brought an identical action against the Indiana & Michigan Electric Company, the same utility which brought the earlier federal challenge.

In both cases, the defendant moved to dismiss the complaints. The courts below granted the motions, essentially ruling as did Judge Holder in Case No. 81–1822 that the action[s] "seek to enforce invalid regulations."

Plaintiff, Sierra Club, now appeals the two orders of dismissal. Appellant contends that APC–13, once approved by the EPA, becomes enforceable federal law which a subsequent state court ruling may not disturb. Sierra Club essentially argues that APC–13 should continue to be enforceable until a new state implementation plan is established in its place. Otherwise, Sierra Club argues, a major loophole in the Act would open.

The appellees claim that a plan (or plan provision) invalidated in state court is unenforceable under the Act in either federal or state court. They contend that a state cannot be deemed to have submitted a plan provision when that state's own court has held that the provision was not adopted in accordance with state law. The appropriate recourse under the Act, appellees argue, is for the EPA to formulate immediately a replacement provision.

## II. ANALYSIS

■ Our examination of the statute, relevant judicial precedent, and the legislative history reveals that the Act does permit a successful state court challenge to render an implementation plan provision unenforceable in both federal and state court.

■ Three reasons support this conclusion. *First,* administrative action, to be valid, must substantially comply with applicable procedural rules. Because APC–13 was not promulgated in accordance with Indiana procedural law, APC–13 is invalid and may not be enforced. *Second,* decisions construing the Act have encouraged litigants to pursue their procedural challenges to state implementation plans in the state

courts. For that review to be meaningful, a state court ruling, like that of the Indiana Appellate Court, must be given effect. *Finally,* no precedent exists to support the Sierra Club's novel suggestion that an invalid plan should be given effect until a replacement is devised; instead, the Act and its Legislative history foresaw EPA action as the appropriate remedy for any state level failure.

## A. APC–13 WAS NOT ADOPTED IN AC-CORDANCE WITH APPLICABLE PROCEDURES AND THEREFORE WAS AN INVALID PLAN SUBMIS-SION

■ The 1970 Amendments to the Clean Air Act provide that "[e]ach State shall, after reasonable notice and public hearings, adopt and submit to the Administrator . . . a plan which provides for implementation, maintenance, and enforcement of such primary standard in each air quality control region (or portion thereof) within such State." 42 U.S.C. § 7410. Although the terms "shall submit" could be construed to impose a mandatory duty upon the states to formulate a plan, judicial construction of the Act has established that the Act merely gives the States the first opportunity to draft and submit a plan. A state may not be compelled to formulate or submit an implementation plan. *Columbia v. Train,* 521 F.2d 971 (D.C.Cir.1975), *vacated on other grounds* 431 U.S. 99, 97 S.Ct. 1635, 52 L.Ed.2d 166 (1977). If, however, a proper plan is not submitted, EPA may establish a plan for the state. *Id.*

The record clearly establishes that Indiana's proposed submission for the control of sulfur dioxide emissions, APC–13, was promulgated without adherence to Indiana procedural law. Because administrative actions taken without substantial compliance with applicable procedures are invalid, it is as if Indiana never submitted APC–13. Since a valid APC–13 was never submitted, EPA's adoption of APC–13 cannot be given effect since EPA approved a provision which was invalid when submitted to the agency.

Both the federal and Indiana state courts have repeatedly recognized that administrative action which fails to substantially comply with applicable administrative procedures cannot be given effect. This Circuit, while noting the limited nature of judicial review of administrative action, has nevertheless stressed the need for judicial review to assure compliance with established procedures:

A judicial review of administrative proceedings respecting agency employee disciplinary action under the Administrative Procedure Act is limited to the question *whether there has been substantial compliance with applicable procedures* and statutes.

*Fagan v. Schroder,* 284 F.2d 666, 668 (7th Cir.1960) (emphasis supplied). The Indiana Courts have also recognized the need to assure that administrative decisions are not "[w]ithout observance of procedure required by law." *Natural Resources Commission of Dept. of Natural Resources v. Sullivan,* 428 N.E.2d 92, 97 (Ind.App.1981); *State Dept. of Natural Resources v. Lehman,* 177 Ind.App. 112, 378 N.E.2d 31, 35 (Ind.App.1978).[5]

Compliance with procedural requirements is especially significant, where, as here, a fundamental procedural safeguard such as the need for written findings is involved.

As we have frequently emphasized, findings of fact are not mere procedural niceties; they are essential to the effective review of administrative decisions. Without findings of fact a reviewing court is unable to determine whether the decision reached by an administrative agency follows as a matter of law from the facts stated as its basis, and whether the facts so found have any substantial support in the evidence.

*U.S.V. Pharmaceutical Corp. v. Secretary of HEW,* 466 F.2d 455, 462 (D.C.Cir.1972); *Great Lakes Screw Corp. v. N.L.R.B.,* 409 F.2d 375, 379 (7th Cir.1969) ("reviewing authorities must know the basis upon which the conclusions rest"); *International Paper*

*Co. v. Federal Power Comm.,* 476 F.2d 121, 128 (5th Cir.1972) ("it is incumbent on an administrative agency to supply clear findings").

The Indiana Appellate Court struck APC–13 precisely because the hearing officer's failure to make written findings made it impossible for the full Environmental Management Board to evaluate and review the decision. The Court stated that where a single board member is used to conduct the hearing, "it is mandatory that findings and recommendations be submitted to the full board." 393 N.E.2d at 217. The Court observed that "[t]he stated intent [of the requirement] is to assure public impact on proposed regulations so that *adequate consideration be given thereto by the full board.*" *Id.* (Emphasis and bracketed material supplied). The Appellate Court's ruling reflected the generally accepted principle of administrative law that in Indiana "all administrative agencies ... must in all cases set out written findings of fact in support of the decision so that th[e] Court may intelligently review the specific decision." *Hawley v. South Bend Dept. of Redevelopment,* 270 Ind. 109, 383 N.E.2d 333 (Ind.1978); *Lind v. Medical Licensing Bd. of Indiana,* 427 N.E.2d 671 (Ind.App.1981). APC–13, unsupported by written findings, was therefore invalid when submitted to the EPA.

B. *MEANINGFUL STATE COURT REVIEW IS CONTEMPLATED UNDER THE ACT*

Federal decisions construing the Act have encouraged litigants to pursue their procedural challenges in the state courts. If it were now held that a state court ruling has no effect under the Act, the method of review held out in previous decisions would be rendered utterly meaningless.

This Circuit, in *Indiana and Michigan Electric, supra,* recognized that the parties had "a right to challenge the reasonableness of state plans in state court." 509 F.2d at 847. The right was intended to be meaningful, in that the ultimate decision of the

---

5. These Indiana precedents are construing the Indiana Administrative Adjudication Act. *See* Indiana Code Annotated, 4–22–1–1 *et seq.* (West 1981).

state court, if unfavorable, would force immediate revision of the plan. We stated:

> ... if part of a state implementation is held invalid by a state court, *the state would have to revise that part.*

*Id.* (emphasis supplied). We further observed that

> ... should the state fail [to revise the invalid part] ... the Administrator *must* propose and promulgate a revision.

*Id.* (emphasis supplied).

Other Circuits have also forcefully acknowledged a meaningful role for state court review of state procedural plan adoption. The Sixth Circuit, in *Ohio Environmental Council v. United States Environmental Protection Agency,* 593 F.2d 24 (6th Cir.1979), upheld the EPA Administrator's approval of a state implementation plan, despite allegations of procedural irregularities, when the Administrator obtained an opinion from the Office of the Attorney General that Ohio procedural requirements had been followed by Ohio in its adoption of the plan. The Court concluded that the Administrator "acted reasonably in determining that the procedural requirements of Ohio law had been met and that the proposed revision was adopted by the State after reasonable notice and public hearing." *Id.* at 29. Significantly, the Court criticized the Ohio Environmental Council's ("OEC") failure to pursue its state based procedural challenges in an Ohio state court. The Court admonished the OEC, stating that:

> The arguments of OEC, both substantive and procedural, were heard by the state agency charged by state law with enforcing the Ohio SIP. No appeal was taken by OEC to an Ohio court where a challenge might have been made to the adequacy of the administrative proceedings. In view of this failure to seek a definite ruling on its claim of procedural irregularities it cannot be heard to complain of U.S. EPA's reliance on an opinion from the office of the State Attorney General.

*Id.* at 29.

The Fourth Circuit, in *Appalachian Power Co. v. Environmental Protection Agency,* 579 F.2d 846 (4th Cir.1978), upheld West Virginia's revised state implementation plan over procedural objections. The Court acknowledged that "before approving a state plan, the EPA must determine that the state plan was adopted at the state level 'after reasonable notice and public hearing.'" *Id.* at 850. The Court held that the notice and hearing requirement was satisfied because the procedure followed "was in accordance with West Virginia law." *Id.* at 850. Like the Sixth Circuit, the Fourth Circuit was also critical of the objector's failure to pursue its procedural challenges in state court, and even went so far as to suggest, in *dicta,* that the failure to pursue a state court challenge could mean the party has no standing to raise the challenge in federal court:

> We have proceeded so far on the assumption that the petitioners have standing to by-pass available state remedies and assert these alleged defects in the state hearings either before the EPA or in this Court. This poses a serious question. Admittedly, there was a well-defined procedure provided by state law whereby the petitioners could have raised these alleged procedural defects by instituting a declaratory judgment action in a state court. Such a procedure would have provided an expeditious means for determining whether the state proceedings were flawed, and, if so, would have provided a means for correcting those flaws at the state level without all the delays involved in later appeals to the EPA and to this Court. The petitioners chose, however, to bypass this available state remedy. *We find persuasive the reasoning that the petitioners, by bypassing the state remedy for correction of any defect in the state proceeding, lack standing to challenge any alleged errors in those State Agency proceedings later before the EPA or this Court. Cf. Anaconda Company v. Ruckelshaus,* (10th Cir.1973) 482 F.2d 1301, 1304. It is unnecessary, however, for us so to conclude in this case, since we have discovered no defects in the state proceedings.

Id. at 854–55 (emphasis added).

In *Western Oil & Gas Association v. United States Environmental Protection Agen-*

*cy,* 633 F.2d 803 (1980), the Ninth Circuit was asked to review alleged procedural irregularities in a related area, revision of a state implementation plan. The objectors, in challenging the California revisions, argued that "unless this court reviews the alleged state procedural errors they will escape review entirely." *Id.* at 813. The Court ruled that "[s]tate law must provide the remedy petitioners seek," *Id.* at 814, and added that "petitioners do not explain why the state's submission of the attainment status designations to the EPA terminated any possibility of relief in the state courts." *Id.* at n. 14.

■ These decisions establish that, in the state and federal partnership established under the Clean Air Act and its subsequent amendments, state court review of plan adoption is an available, if not a mandatory, means of review which certainly is meant to be meaningful.

If the state court procedural review afforded under the Act is to have meaning, the rulings of the state court must be given effect. This precise reasoning was employed by the District Court for the Central District of Illinois in *People of the State of Illinois v. Celotex,* 516 F.Supp. 716 (1981). In *Celotex,* Illinois attempted to enforce an implementation plan provision which had been invalidated by the Illinois Supreme Court due to procedural deficiencies. In dismissing those portions of the complaint which sought to enforce the invalidated provision, the Court reasoned:

> When the *Seventh Circuit* upheld USEPA's approval of the Illinois SIP, the court *specifically recognized the petitioner's right to challenge the regulations in the state courts, based on procedural errors in the state administrative proceedings.* This finding formed part of the basis for the court's denial of petitioner's due process claim, *Indiana & Michigan,*

*supra* at 847. Several industries followed the cue and pursued judicial review in the state courts, with the result being that Regulations 203(g)(1)(B) and 204(c)(1)(A) were found to be invalid.

*Id.* at 718. The *Celotex* Court also commented on the unusual and inconsistent statutory scheme which would result if the state court rulings were not given effect:

> It would be an anomaly, if not a denial of defendant's due process rights, to allow, at this point, full enforcement of those invalid regulations, especially by the State of Illinois, which is totally barred in its own courts.

*Id.*

■ The *Celotex* reasoning is persuasive. If we were to find that implementation plan provisions were enforceable despite state court invalidation of them, the state court review would be meaningless. Those who followed our pronouncements concerning the availability of state court review would find their efforts have been for naught; and the Clean Air Act would be construed to reach the inconsistent result that an implementation plan, the product of a joint federal and state effort under the same Act, would be enforceable in the courts of one level of government but not the other.[6] We therefore align this Circuit with the holding in *Celotex.*

We note here that Sierra Club also advances a number of other statutory arguments to establish the federal enforceability of APC–13. None of these arguments have merit.

■ Sierra Club argues that, once the EPA adopts a state implementation plan, that plan becomes federal law and only the federal government may alter that law. Sierra Club points out that Title 42, Section 7607(b)(1),[7] provides that an approved plan

---

**6.** It is a long established principle of statutory construction that a statute should not be construed in a manner which leads to absurd or inconsistent results. *U.S. v. Turkette,* 452 U.S. 576, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981); *Government of Virgin Islands v. Berry,* 604 F.2d 221, 225 (3d Cir.1979).

**7.** 42 U.S.C. § 7607(b) provides:

(1) A petition for review of action of the Administrator in promulgating any national primary or secondary ambient air quality standard, any emission standard or requirement under Section 112 [42 USCS § 7412], any standard of performance or requirement

may be invalidated only in the appropriate federal court of appeals. This assumes, however, that the plan is adopted initially in accordance with the Act. The state-federal partnership fashioned under the Act gave a place to the states and their reviewing courts in the initial plan formulation. The state governmental bodies are entitled to review the procedures employed to adopt a state implementation plan. Once a plan is adopted by the state and it *withstands any subsequent procedural challenge,* then § 7607(b)(1) provides that invalidation may occur only in the federal appellate courts. Any other interpretation would destroy the meaningfulness of the review this circuit and others have held would be available in the state courts.

Sierra Club next contends that the ruling in the Indiana Appellate Court amounted to a plan revision or modification by the State. Appellant correctly observes that modifications or revisions must be approved by the EPA to become effective. *See* 42 U.S.C. § 7410(a)(3)(A); [8] *Train v. N.R.D.C.,* 421

U.S. 60, 95 S.Ct. 1470, 43 L.Ed.2d 731 (1975); *Friends of the Earth v. Carey,* 535 F.2d 165, 169 (2nd Cir.1976).

■ The proceeding before the Indiana courts was not a revision or a modification of a plan. Modification or revision assumes the existence of a valid plan in the first place. The Indiana Court ruled that a valid plan never existed, for there were procedural defects which invalidated the plan at its inception. The state court proceedings therefore are not modifications or revisions.

This Circuit has expressly held that state court invalidation of an original plan provision for procedural defects does not constitute a revision of the plan. In *Public Service Co. of Indiana v. U.S. E.P.A.,* 682 F.2d 626 (1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 762, 74 L.Ed.2d 977 (1983), the parties offered the two district court cases we now review as precedent on a revision question. We held the cases to be "inapposite" because they addressed plans that were "invalid when submitted to the agency," not revisions. 682 F.2d at 633. To the same

under section 111 [42 USCS § 7411], any standard under section 202 [42 USCS § 7521] (other than a standard required to be prescribed under section 202(b)(1) [42 USCS § 7521(b)(1)], any determination under section 202(b)(5) [42 USCS § 7521(b)(5)], any control or prohibition under section 211 [42 USCS § 7545], any standard under section 231 [42 USCS § 7571] any rule issued under section 113, 119, or under section 120 [42 USCS §§ 7413, 7419, or 7420], or any other nationally applicable regulations promulgated, or final action taken, by the Administrator under this Act may be filed only in the United States Court of Appeals for the District of Columbia. A petition for review of the Administrator's action in approving or promulgating any implementation plan under section 110 or section 111(d) [42 USCS § 7410 or 7411(d)], any order under section 111(j) [42 USCS § 7411(j)], under section 112(c) [42 USCS § 7412(c)], under section 1113(d) [42 USCS § 7413(d)], under section 119 [42 USCS § 7419], or under section 120 [42 USCS § 7420], or his action under section 119(c)(2)(A), (B), or (C) (as in effect before the date of enactment of the Clean Air Act Amendments of 1977) or under regulations thereunder, or any other final action of the Administrator under this Act (including any denial or disapproval by the Administrator under title I [42 USCS §§ 7401 et seq.]) which is locally or regionally applicable may

be filed only in the United States Court of Appeals for the appropriate circuit. Notwithstanding the preceding sentence a petition for review of any action referred to in such sentence may be filed only in the United States Court of Appeals for the District of Columbia if such action is based on a determination of nationwide scope or effect and if in taking such action the Administrator finds and publishes that such action is based on such a determination. Any petition for review under this subsection shall be filed within sixty days from the date notice of such promulgation, approval, or action appears in the Federal Register, except that if such petition is based solely on grounds arising after such sixtieth day, then any petition for review under this subsection shall be filed within sixty days after such grounds arise. (2) Action of the Administrator with respect to which review could have been obtained under paragraph (1) shall not be subject to judicial review in civil or criminal proceedings for enforcement.

8. 42 U.S.C. § 7410(a)(3)(A) provides:

The Administrator shall approve any revision of an implementation plan applicable to an air quality control region if he determines that it meets the requirements of paragraph (2) and has been adopted by the State after reasonable notice and public hearings.

effect, *see Celotex, supra.* Thus, the actions below do not constitute revisions.

In some ways, Sierra Club tacitly acknowledges that the state court ruling serves to invalidate APC–13. While Sierra Club pursued its statutory arguments to the contrary, it also chose to spend a great deal of its time on the alternative argument that this court should at least construe the Act to allow the APC–13 to continue in effect until an alternative provision is devised. We therefore will consider whether there is any support in the Act or its legislative history for continuing an invalid plan in effect until a replacement is devised.

### C. *APC–13 MAY NOT REMAIN IN EFFECT UNTIL A SUBSTITUTE PROVISION IS DEVISED*

Sierra Club contends that the existing provision should remain enforceable until an alternative provision is substituted in its place. Sierra Club argues that if a state court invalidation of a plan provision is given immediate effect, then the EPA will never be entirely sure that a plan drafted at the state level is firmly in place until all state level challenges have been pursued to their bitter and protracted end.

■ Our examination shows that Congress, in passing the Clean Air Act Amendments of 1970 was aware of the risk that some states, for any number of reasons, might fail to promulgate an implementation plan which was proper in all respects. The remedy Congress built into the Act in the event of a state level failure is for the EPA to demand an immediate state replacement or to promulgate its own implementation plan (or appropriate provision) for the state. This is the remedy Congress foresaw for state inaction or ineffectiveness. The Sierra Club's proposed solution, that the invalid

provision be deemed enforceable until a new plan is established, finds no support in the Act's terms or legislative history.

First, § 7410(c)(1) instructs the EPA Administrator to devise an implementation plan when the state plan fails to meet statutory requirements. The section provides:

The Administrator shall, after consideration of any state hearing record, promptly prepare and publish proposed regulations setting forth an implementation plan, or portion therefor, for a state if—

(A) *The State fails to submit an implementation plan which meets the requirements of this section.*

(B) the plan, or any portion thereof, submitted for such State is determined by the Administrator not to be in accordance with the requirements of this section, or

(C) the State fails, within 60 days after notification by the Administrator or such longer period as he may prescribe, to revise an implementation plan as required. . . .

(Emphasis added). In the present case, Indiana in effect failed to submit a valid provision for the regulation of sulfur dioxide emissions. This would fall within 7410(c)(1)(A), in that "the state fail[ed] to submit an implementation plan which meets the requirements of this section." Consequently, the intended remedy is for the EPA to act.[9]

The legislative history also shows that Congress intended that EPA action serve as the contingent remedy in case of plan failure at the state level. While the legislative history is not so enlightening as to address the specific problem we face, it is replete with a number of general statements that the spectre of federal action was to serve as a backstop to state inaction or failure. Representative Staggers of West Virginia,

---

9. Even if it could be said that the present case does not fall specifically within Subsection (A), it is clear that the scope of § 7410(c)(1) was intended to be sufficiently broad to address *any* reason for state plan failure. Subsection (A) addresses the state's failure to submit any plan at all or the failure to submit a plan which meets any of the statutory requirements; Subsection (B) addresses any failing identified by

the EPA Administrator; and Subsection (C) addresses those cases where the state fails to revise the plan promptly. The combined effect of the subsections is to address broadly all elements of the implementation plan process, from adoption to approval to revision. This evidences a Congressional intent that EPA action is intended to remedy *any* deficiency in a state plan.

in summarizing the bill for House members prior to the vote stated:

> But if any State does not come up with a state plan to the satisfaction of the Federal Government then the Federal Government will step in and establish a plan for such a State.

116 Cong.Rec. H19205 (daily ed. June 10, 1970). Representative Jarman of Oklahoma echoed this evaluation of the bill's intent:

> If the State fails to file a letter of intent or does not adopt a plan or adopts a plan which does not meet the statutory requirements, then after reasonable notice and hearing the Secretary [10] may publish proposed regulations setting forth a plan.

*Id.* at H19209. The views of Rep. Staggers and Rep. Jarman were reflected in the final House Report on the Bill. The Report, in its initial summary highlighting the primary features of the Bill stated:

> If a State fails to file a letter of intent or does not adopt a plan or adopts a plan which does not meet statutory requirements, then after reasonable notice, the Secretary may publish proposed regulations setting forth a state plan.

House Comm. on Interstate and Foreign Commerce, Clean Air Amendments of 1970, H.Rep. No. 91–1146, 91st Cong., 2d Sess., *reprinted in* 1970 U.S.Code Cong. & Ad. News 5356, 5357.

The Senate also recognized the same role for the EPA Administrator. The Senate Report states:

> The Committee also recognizes that it is possible that an implementation plan approved or promulgated by the Secretary may later be found inadequate to attain the national ambient air quality standard(s). Whenever information reveals that an approved or promulgated implementation plan is inadequate, the Secretary would be required to act to revise such plan.

Sen.Rep. No. 91–1196, 91st Cong., 2d Sess. 14 (1970).

Thus, while the Congress did not explicitly foresee the possibility of a successful state court challenge *after* an implementation plan was approved by EPA, it did rather clearly embrace the general proposition that federal action was intended to remedy *any* problem with a state implementation plan.

Where, as here, Congress has clearly shown an intent to have state participation and an intent to have EPA formulate a plan in the event of state level failures, this court is not free to fashion unprecedented and unusual alternative remedies that have no foundation in the terms of the Act or in the Act's legislative history. The court therefore rejects Sierra Club's proposed remedy.

While the court acknowledges that its ruling is in some ways a setback to environmental protection, it does not agree that years will pass before Indiana has an acceptable and workable implementation plan. APC–13 provides some examples and guidelines to the EPA as to what Indiana believes might be one approach to meeting national standards. The EPA may submit APC–13 in its current form for proper notice and hearing and comment in Indiana, if it so desires.[11] The same basic framework

---

**10.** Any reference to the Secretary of HEW in the legislative history should be construed as a reference to the Administrator of the EPA. The Conference Committee which devised the final version of the Amendments explained:

> Existing law and the House and Senate versions of the bill all provide that the Clean Air Act is to be carried out by the Secretary of Health, Education and Welfare. During the period in which the committee of conference was considering the bill, all of the functions of the Secretary of Health, Education and Welfare under the Clean Air Act were transferred, pursuant to Reorganization Plan Numbered 3 of 1970, to the Administrator of the Environmental Protection Agency. Accordingly, all references to the Secretary in the bill, in existing law, and in the Statement of Managers have been changed to "Administrator", . . .

*Clean Air Amendments of 1970, Conf.Rep. No. 91–1783, 91st Cong.2d Sess., reprinted in* 1970 U.S.Code Cong. & Ad.News 5356, 5374.

**11.** In fact, this could have been done long ago, when it first became apparent the promulgation of APC–13 may suffer from procedural defects.

may be appropriate once proper administrative proceedings have been held.

For these reasons, the district courts are AFFIRMED.