**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

NATURAL RESOURCES DEFENSE
COUNCIL, INC., a non-profit
corporation; COMMUNITIES FOR A
BETTER ENVIRONMENT, a California
non-profit corporation;
COALITION FOR A SAFE
ENVIRONMENT, a California non-
profit corporation; DESERT CITIZENS
AGAINST POLLUTION, a California
non-profit corporation,
               *Plaintiffs-Appellants,*

       v.

SOUTH COAST AIR QUALITY
MANAGEMENT DISTRICT; GOVERNING
BOARD OF THE SOUTH COAST AIR
QUALITY MANAGEMENT DISTRICT;
BARRY WALLERSTEIN, Executive
Officer,
               *Defendants-Appellees,*

       and

ORANGE COUNTY SANITATION
DISTRICT; SOUTHERN CALIFORNIA
EDISON CO.; WALNUT CREEK
ENERGY LLC; CPV SENTINEL LLC;
COUNTY SANITATION DISTRICT NO. 2
OF LOS ANGELES COUNTY; EL
SEGUNDO POWER LLC; LOS
ANGELES AREA CHAMBER OF
COMMERCE; LOS ANGELES COUNTY
BUSINESS FEDERATION,
    *Intervenor-Defendants-Appellees*

No. 09-57064
D.C. No.
2:08-cv-05403-GW-
PLA
OPINION

Appeal from the United States District Court
for the Central District of California
George H. Wu, District Judge, Presiding

Argued and Submitted
June 8, 2011—Pasadena, California

Filed June 29, 2011

Before: Stephen S. Trott and Pamela Ann Rymer, Circuit
Judges, and Ralph R. Beistline, Chief District Judge.*

Opinion by Judge Rymer

*The Honorable Ralph R. Beistline, Chief District Judge for the U.S.
District Court for Alaska, Anchorage, sitting by designation.

## COUNSEL

Angela J. Meszaros, Law Offices of Angela Johnson Meszaros, South Pasadena, California, (argued); Adriano Martinez, Natural Resources Defense Council, Santa Monica, California; Shana Lazerow, Communities for a Better Environment, Oakland, California, for the plaintiffs-appellants.

Bradley R. Hogin, Woodruff, Spradlin & Smart, Costa Mesa, California, for the defendants-appellees.

## OPINION

RYMER, Circuit Judge:

The Natural Resources Defense Council and other groups (collectively, the NRDC) appeal the dismissal of their claims against the South Coast Air Quality Management District (SCAQMD). We have jurisdiction under 28 U.S.C. § 1291, and we affirm. The district court did not err in determining it lacked jurisdiction over the alleged violations of Clean Air Act § 173(c). Nor did it err in concluding that the NRDC otherwise failed to state a claim upon which relief can be granted: Regulation XIII does not contain validity requirements for SCAQMD's internal offsets, and Environmental Protection Agency (EPA) rules do not require SCAQMD to use a tracking system.

I

The Clean Air Act (CAA) requires the EPA to establish National Ambient Air Quality Standards (NAAQS). 42 U.S.C. § 7409(a). States are required to maintain and enforce the NAAQS through State Implementation Plans (SIPs), which must be approved by the EPA and become federal law after such approval. *Id*. § 7410(a), (k). The EPA identifies air quality control regions that do not meet the NAAQS as nonattainment regions. *Id*. § 7407(d). In nonattainment regions, SIPs must include "new source review," which means they must require permits for the construction and operation of new or modified major stationary sources of pollution. *Id*. § 7502(c)(5).

Section 173 of the CAA provides that SIP permit programs must require new sources of pollution to obtain "offsetting emissions reductions." *Id*. § 7503(a)(1)(A). Section 173(c) establishes requirements for the offsets in these programs. *Id*. § 7503(c). Section 173(c) also includes validity requirements for offsetting emissions reductions, specifically that they be "in effect and enforceable" when a new source comes online and "offset by an equal or greater reduction" that was not "otherwise required." *Id*.

SCAQMD prepares and implements the SIP for the South Coast Air Basin, the air quality control region for much of Los Angeles, Riverside, San Bernardino, and Orange counties. The South Coast Air Basin is a nonattainment region for ozone and particulate matter. SCAQMD has set forth its new source review permit program in Regulation XIII, most of which the EPA has approved and incorporated into the SIP. *See generally* Approval and Promulgation of Implementation Plan for SCAQMD, 61 Fed. Reg. 64291 (Dec. 4, 1996).

One of the Regulation XIII rules, Rule 1303(b)(2), requires that most emission increases be offset in one of two ways. First, they may be offset by Emission Reduction Credits

(ERCs) under Rule 1309. An applicant may obtain an ERC from SCAQMD when it has reduced its own emissions, and ERCs may also be traded on the market. Rule 1309(b), (d), (e). Rule 1309(b)(4) imposes five validity requirements on these reductions: they must be real, quantifiable, enforceable, permanent, and surplus beyond existing requirements. Second, certain priority sources may offset their emissions with allocations from the Priority Reserve under Rule 1309.1. Some other emissions are exempt under Rule 1304.

SCAQMD maintains an internal bank of credits known as "offset accounts" that it uses to provide allocations from the Priority Reserve and to offset exemptions under Rule 1304. SCAQMD allegedly deposited invalid credits into its offset accounts and continues to distribute them.

The NRDC's complaint contains four claims for relief. First, it alleges that SCAQMD violates CAA § 173(c) by distributing invalid credits from its offset accounts under Rules 1304 and 1309.1. Second, the NRDC alleges SCAQMD violates Regulation XIII as well as § 173(c) by maintaining invalid credits in its offset accounts. Third and fourth, the NRDC alleges that SCAQMD violates the EPA rule approving Regulation XIII and § 173(c) by failing to track emission reductions to show it maintains positive account balances in its offset accounts.

In a published opinion, the district court granted SCAQMD's motion to dismiss under Fed. R. Civ. P. 12(b)(1), (6). *Natural Resources Defense Council v. South Coast Air Quality Management District*, 694 F. Supp. 2d 1092 (C.D. Cal. 2010). First, the court determined that it lacked jurisdiction under CAA § 304 over the alleged violations of § 173(c). That disposed of the first claim entirely and portions of the other claims. As for the remainder of the second claim, the court concluded that the NRDC failed to allege a violation of Regulation XIII because the regulation does not contain validity requirements for internal offsets. As for the remainder of

the third and fourth claims, the court concluded that the NRDC failed to state a claim because neither the EPA rule nor the EPA-approved portion of Regulation XIII requires a tracking system.

## II

We review de novo a district court's grant of a motion to dismiss for lack of subject matter jurisdiction or failure to state a claim. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1030 (9th Cir. 2008); *Nurse v. United States*, 226 F.3d 996, 1000 (9th Cir. 2000).

## III

**[1]** We begin with the question of the district court's jurisdiction over the alleged violations of § 173(c). CAA § 307(b) provides that:

> A petition for review of the Administrator's action in approving or promulgating any implementation plan under section 7410 of this title . . . or any other final action of the Administrator under this chapter . . . which is locally or regionally applicable may be filed only in the United States Court of Appeals for the appropriate circuit.

42 U.S.C. § 7607(b)(1). Further, "[a]ction of the Administrator with respect to which review *could* have been obtained under paragraph (1) shall not be subject to judicial review in civil or criminal proceedings for enforcement." *Id.* § 7607(b)(2) (emphasis added). Whenever § 307 review could have been obtained, "this form of judicial review is exclusive . . . [and] foreclose[s] the alternative avenue of citizen suit enforcement through 42 U.S.C. § 7604 [CAA § 304]." *Romoland School Dist. v. Inland Empire Energy Ctr.*, 548 F.3d 738, 755 (9th Cir. 2008).

**[2]** In 1996, the EPA promulgated a rule approving much of the SIP for the South Coast Air Basin. Approval of Implementation Plan, 61 Fed. Reg. 64291. In 2006, the EPA issued a rule approving a revision to SIP Rule 1309.1. *See* Revisions to the Cal. SIP, SCAQMD, 71 Fed. Reg. 35157 (June 19, 2006). In the 2006 rule, the EPA observed that, "[i]n approving Rule 1309.1 in 1996," it had determined that SCAQMD's internal credits complied with § 173(c). *Id.* Specifically, it noted that SCAQMD had "demonstrated that the Priority Reserve bank's emission reduction credits complied with the requirements of section 173(c)." *Id.*

**[3]** The issuance of an EPA rule indicating that the internal offsets comply with § 173(c) constituted "final action of the Administrator" that is "locally or regionally applicable" under § 307(b). The rule is "locally or regionally applicable," as it concerns only the SIP applicable to the Los Angeles area. The action is "final" for purposes of appellate review because it is the consummation of the agency's decision-making process such that legal consequences will flow from it. *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). The EPA determination additionally falls within § 307(b) because it was part of an EPA rule that "approv[ed] . . . [an] implementation plan." 42 U.S.C. § 7607(b)(1).

**[4]** The NRDC argues that it is not challenging the EPA's approval of the SIP, but rather SCAQMD's implementation of the SIP, specifically the validity of the credits in its offset accounts. However, because the EPA issued rules that not only approved the SIP but also indicated that the credits in the Priority Reserve comply with § 173(c), the NRDC is effectively seeking review of the EPA's decision.

**[5]** As a result, the NRDC seeks review of an "[a]ction of the Administrator with respect to which review could have been obtained under [§ 307(b)(1)]." *Id.* § 7607(b)(2). Because the NRDC failed timely to bring this claim directly to the Ninth Circuit following the promulgation of the EPA rules in

1996 or 2006, it is foreclosed from now bringing the claim as a citizen suit under § 304(b). *Romoland*, 548 F.3d at 755.

**[6]** Even if it were not foreclosed, a citizen suit to enforce § 173(c) is not authorized by § 304 because § 173(c) does not contain an "emission standard or limitation." Section 304 provides that "any person may commence a civil action on his own behalf [ ] against any [governmental instrumentality or agency] . . . who is alleged to have violated . . . an *emission standard or limitation* under this chapter." 42 U.S.C. § 7604(a)(1) (emphasis added). Section 304(f) offers several definitions of "emission standard or limitation," including a "standard of performance," "any condition or requirement of a permit under . . . part D of subchapter I," and "any other standard, limitation, or schedule established under . . . any requirement to obtain a permit as a condition of operations." *Id*. § 7604(f)(1), (3), (4).

None of these definitions of "emission standard or limitation" encompasses § 173(c). First, § 173(c) does not meet the definition of a "standard of performance." The statute defines "standard of performance" as "a requirement of continuous emission reduction, including any requirement relating to the operation or maintenance of a source to assure continuous emission reduction." *Id*. § 7602(l). Section 173(c) does not require emission reduction. Instead, it details requirements for the functioning of offsets within SIP permit programs, such as where the reductions can come from and what the validity requirements are. *Id*. § 7503(c). Section 173 is titled "Permit requirements," and is within Part D of CAA Subchapter I, which is titled, "Plan Requirements for Nonattainment Areas." *Id*. § 7501 *et seq*. Further, the CAA assigns responsibility to SIPs, not § 173(c), to "include enforceable emission limitations." *Id*. § 7410(a)(2)(A). In the SIP at issue here, those reduction requirements are found in Rule 1303's requirement that "emission increases shall be offset by either Emission Reduction Credits . . . or by allocations from the Priority Reserve." Rule 1303(b)(2). *Cf. Del. Valley Citizens*

*Council for Clean Air v. Davis*, 932 F.2d 256, 266 (3d Cir. 1991) (holding that CAA Section 172 did not "deal with emission standards or limitations" but rather "outline[d] what an implementation plan must contain to get EPA approval"); *Conservation Law Foundation v. Busey*, 79 F.3d 1250, 1259-60 (1st Cir. 1996) (holding that "[n]othing in [CAA Section 176] imposes an emissions reduction requirement" and repudiating an earlier decision to the contrary).

**[7]** Nor does § 173(c) set forth a "condition or requirement of a permit under . . . part D of subchapter I" or a "standard, limitation, or schedule established under . . . any requirement to obtain a permit as a condition of operations." 42 U.S.C. § 7604(f)(3), (4). Section 173(c) places requirements on SIPs, and SIPs then set requirements for obtaining permits, which in turn may have their own conditions or requirements. It is those requirements established under the SIP that are the subject of these provisions of § 7604(f)(3), (4), not § 173(c) itself. *See Romoland*, 548 F.3d at 754 (Section 304(f)(4) does not permit citizen suits alleging "violation of the CAA" and instead applies to "a term or condition of the permit . . . issued."). The district court was therefore correct that it lacked jurisdiction under § 304 over the alleged violations of § 173(c).

## IV

We turn now to the question of whether Regulation XIII contains validity requirements for internal offsets. "In interpreting a SIP, we begin with a look toward the plain meaning of the plan and stop there if the language is clear." *Safe Air For Everyone v. EPA*, 488 F.3d 1088, 1095 (9th Cir. 2007). This is so unless " 'clearly expressed administrative intent is to the contrary or if such plain meaning would lead to absurd results.' " *Id.* at 1097 (quoting *Dyer v. United States*, 832 F.2d 1062, 1066 (9th Cir. 1987)) (internal brackets omitted).

**[8]** The validity requirements in Regulation XIII are part of Rule 1309, which is titled "Emission Reduction Credits." Part

(b) of that rule is titled "Application for an ERC for a New Emission Reduction" and describes what an applicant must provide in order to convert its own emission reductions into ERCs that can be traded. The relevant subpart, part (b)(4), provides:

> The applicant must demonstrate to the Executive Officer or designee that all stationary and mobile source reductions are: (A) real; (B) quantifiable; (C) permanent; (D) federally enforceable, and (E) not greater than the equipment would have achieved if operating with current Best Available Control Technology (BACT).

Rule 1309(b)(4).

[9] Regulation XIII distinguishes between ERCs, to which these validity requirements apply, and internal offsets such as those in the Priority Reserve. Most clearly, Rule 1303 provides:

> Unless exempt from offsets requirements pursuant to Rule 1304, emission increases shall be offset by *either* Emission Reduction Credits approved pursuant to Rule 1309, *or* by allocations from the Priority Reserve in accordance with the provisions of Rule 1309.1.

Rule 1303(b)(2)(A) (emphasis added). Applying the ERC validity requirements to the internal offsets would require collapsing this distinction between ERCs and the Priority Reserve. Doing so would be inconsistent with the disjunctive "either/or" language of Rule 1303(b)(2).

[10] We therefore conclude that Regulation XIII is clear that the validity requirements of Rule 1309(b)(4) apply to ERCs, not to the internal offsets at issue here. Accordingly, we agree with the district court that the NRDC's second claim

must be dismissed for failure to state a violation of Regulation XIII.

V

Finally, we consider whether EPA rules require SCAQMD to use a tracking system. We have explained that the preamble of an EPA rule approving a SIP has "little legal traction" and "should not be considered unless the regulation itself is ambiguous." *El Comite Para El Bienestar de Earlimart v. Warmerdam*, 539 F.3d 1062, 1070 (9th Cir. 2008). In explaining what constitutes "preamble," we have observed that "the operative language in the Federal Register, whereby the EPA exercises its delegated legislative rulemaking authority, is the language that amends the Code of Federal Regulations . . . and that all text prior to this reference is preamble." *Id.* at 1070 n.4.

**[11]** The EPA rule approving the SIP does contain a reference to a tracking system in its preamble. Approval of Implementation Plan, 61 Fed. Reg. at 64292. Yet we are not to consider such references unless the regulation itself is ambiguous. *El Comite*, 539 F.3d at 1070. There is no ambiguity here. Nothing in the EPA-approved SIP even suggests a tracking system must be applied. The district court thus properly dismissed the NRDC's third and fourth claims for failure to allege a violation of the EPA rule or the SIP.

VI

As a result, we affirm dismissal of the NRDC's complaint. The district court lacked jurisdiction under CAA § 304 over the alleged violations of § 173(c). The NRDC otherwise failed to state a claim, for Regulation XIII does not impose validity requirements on SCAQMD's internal offsets and EPA rules do not require the use of a tracking system.

AFFIRMED.