**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| CALIFORNIA DUMP TRUCK OWNERS ASSOCIATION, <br><br> *Plaintiff-Appellant*, <br><br> v. <br><br> MARY D. NICHOLS, Chairperson of the California Air Resources Board; JAMES GOLDSTENE, Executive Officer of the California Air Resources Board, <br><br> *Defendants-Appellees*, <br><br> NATURAL RESOURCES DEFENSE COUNCIL, INC., <br><br> *Intervenor-Defendant–Appellee.* | No. 13-15175 <br><br> D.C. No. 2:11-cv-00384-MCE-GGH <br><br> ORDER AND AMENDED OPINION |

Appeal from the United States District Court
for the Eastern District of California
Morrison C. England, Chief District Judge, Presiding

Submitted February 9, 2015[*]
San Francisco, California

Filed March 3, 2015
Amended April 27, 2015

Before: John T. Noonan, Senior Circuit Judge, Barry G. Silverman, Circuit Judge, and Paul C. Huck, Senior District Judge.[**]

Opinion by Judge Huck

## SUMMARY[***]

### Environmental Law

The panel affirmed the dismissal for lack of subject matter jurisdiction of a federal preemption challenge to a

---

[*] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

[**] The Honorable Paul C. Huck, United States District Judge for the Southern District of Florida, sitting by designation.

[***] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

California environmental regulation addressing diesel trucks.

The panel affirmed the district court's holding that the Environmental Protection Agency's approval of the regulation as part of California's state implementation plan divested the district court of jurisdiction under § 307(b)(1) of the Clean Air Act. The panel concluded that the suit, as a practical matter, challenged the state implementation plan itself. Because the court of appeals has exclusive jurisdiction over such challenges pursuant to § 307(b)(1), the district court lacked jurisdiction.

## COUNSEL

Patrick J. Whalen, Law Offices of Brooks Ellison, Sacramento, California, for Plaintiff-Appellant.

Nicholas Stern, Deputy Attorney General for the State of California, Sacramento, California, for Defendants-Appellees.

Melissa Lin Perrella, David Pettit, and Morgan Wyenn, Natural Resources Defense Council, Santa Monica, California, for Intervenor-Defendant–Appellee.

**ORDER**

The opinion filed on March 3, 2015, and published at 778 F.3d 1119, is hereby amended as follows:

On page 1132, the following text should be placed in a new footnote inserted after the words <is the Truck Association's own doing.>:

> We also note that although 28 U.S.C. § 1631 provides for transfer of cases when the original court lacked jurisdiction, but the transferee court would have had jurisdiction at the time the complaint was filed, this statute does not apply here. At the time the Truck Association filed its complaint, this court did not have jurisdiction over the case, because the EPA had not yet approved the Regulation as part of California's SIP. Only when the EPA later took final action in approving the Regulation as part of California's SIP well after the complaint was filed did this court gain jurisdiction pursuant to § 307(b)(1). Because we would not have been able to exercise jurisdiction on the date the case was filed in the district court, which is one of the requirements of § 1631, we could not have transferred the case to this court under that statute.

With this amendment, the petition for panel rehearing is denied.  Judge Silverman voted to deny the petition for rehearing en banc and Judges Noonan and Huck so recommend.  The full court has been advised of the petition

for rehearing en banc and no judge of the court has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35.

Appellees' petition for rehearing and petition for rehearing en banc are **DENIED**. No further petitions for rehearing or rehearing en banc will be entertained.

## OPINION

HUCK, Senior District Judge:

The California Dump Truck Owners Association (Truck Association) appeals the dismissal of its federal preemption challenge to a California environmental regulation.[1] At issue is whether the Environmental Protection Agency's (EPA) approval of the regulation as part of California's state implementation plan (SIP) divested the district court of subject matter jurisdiction under § 307(b)(1) of the Clean Air Act (CAA), 42 U.S.C. § 7607(b)(1). That section vests federal circuit courts of appeals with exclusive jurisdiction over petitions challenging the EPA's approval of a SIP. The Truck Association's suit, as a practical matter, challenges the SIP itself, and this Court has exclusive jurisdiction over such challenges pursuant to § 307(b)(1). Accordingly, we affirm

---

[1] The Truck Association is a trade association representing construction trucking companies operating in California.

the district court's dismissal for lack of subject matter jurisdiction.[2]

## I.  Background

The CAA creates a partnership between the federal government and the states to combat air pollution. *Natural Res. Def. Council, Inc. v. U.S. Dep't of Transp.*, 770 F.3d 1260, 1264 (9th Cir. 2014). Under the CAA, the EPA must prescribe national ambient air quality standards (NAAQS) for certain air pollutants, and each state is responsible for implementing those standards within its borders. 42 U.S.C. §§ 7409–10. Specifically, each state must adopt, and submit for the EPA's approval, a SIP that provides for the "implementation, maintenance, and enforcement" of the NAAQS. *Id.* § 7410(a)(1). While a state has considerable discretion in formulating its SIP, the SIP must include "enforceable emission limitations" and control measures and "a program to provide for the enforcement" of such measures. *Id.* § 7410(a)(2)(A), (C). It must further provide "necessary assurances" that the state has "adequate personnel, funding, and authority" to carry out the SIP, and is not prohibited from doing so by "any provision of Federal or State law." *Id.* § 7410(a)(2)(E). Once approved by the EPA, a SIP becomes federal law and must be carried out by the state. *Safe Air for Everyone v. EPA*, 488 F.3d 1088, 1091

---

[2] The district court also dismissed the Truck Association's complaint for the alternative reason that the EPA is a necessary and indispensable party under Federal Rule of Civil Procedure 19. However, because we have determined that the district court properly dismissed the complaint for lack of subject matter jurisdiction, we need not, and, therefore, do not reach this alternative basis for dismissal.

(9th Cir. 2007); *Bayview Hunters Point Cmty. Advocates v. Metro. Transp. Comm'n*, 366 F.3d 692, 695 (9th Cir. 2004). A state's SIP evolves as the state proposes, and the EPA approves, revisions to account for new NAAQS and emissions reduction technologies. 42 U.S.C. § 7410(a)(2)(H). Approved SIPs may be enforced "by either the State, the EPA, or via citizen suits." *Bayview*, 366 F.3d at 695.

In 2008, the California Air Resources Board (CARB) adopted the Truck and Bus Regulation (Regulation), Cal. Code Regs. tit. 13, § 2025, for incorporation into California's SIP.[3] The Regulation helps California meet the EPA's NAAQS for fine particulate matter (PM) and ozone. Broadly speaking, it requires heavy-duty diesel trucks, whose emissions contribute significantly to PM and ozone pollution, to be upgraded with pollution filters and lower-emission engines. The Regulation took effect on January 1, 2012.

In April 2011, the Truck Association filed an amended complaint in district court to enjoin enforcement of the Regulation. It claimed that, under the Supremacy Clause of the United States Constitution, the Regulation was preempted by the Federal Aviation Administration Authorization Act (FAAAA), which prohibits states from enacting regulations "related to a price, route, or service of

---

[3] The full title of the Truck and Bus Regulation is a "Regulation to Reduce Emissions of Diesel Particulate Matter, Oxides of Nitrogen and Other Criteria Pollutants, from In-Use Heavy-Duty Diesel-Fueled Vehicles." Cal. Code Regs. tit. 13, § 2025.

any motor carrier . . . with respect to the transportation of property." 49 U.S.C. § 14501(c)(1). The Truck Association alleged that its motor carrier members would have to increase prices and alter their routes and services to offset the costs of complying with the Regulation. The Truck Association sought a declaration that the FAAAA preempted the Regulation and an injunction against its enforcement by CARB. The Natural Resources Defense Council, Inc. (NRDC) intervened on CARB's behalf.

In November 2011, the Truck Association filed a motion for summary judgment as well as a motion for preliminary injunction to enjoin enforcement of the Regulation until dispositive motions could be decided. The following month, the NRDC filed a cross-motion for summary judgment. The district court denied the Truck Association's motion for preliminary injunction and took the motions for summary judgment under submission.

Throughout this time, the Regulation had progressed through the EPA's SIP approval process. In May 2011, a month after the Truck Association filed its amended complaint, CARB submitted the Regulation to the EPA.[4] In July 2011, the EPA issued a notice of proposed rulemaking announcing its intention to approve the Regulation. Proposed Rule, Approval and Promulgation of Implementation Plans, 76 Fed. Reg. 40652 (proposed July 11, 2011) (to be codified at 40 C.F.R. pt. 52). In the notice, the EPA concluded that the Regulation complied with the

---

[4] The Regulation as submitted to the EPA included certain amendments that were adopted by CARB in 2011.

CAA.  In particular, the EPA noted that CARB had authority under California law to implement the Regulation, and that the EPA knew of "no obstacle under Federal or State law" to its implementation.  *Id.* at 40658.  The EPA further found that CARB had adequate personnel and funding to enforce the Regulation and that CARB's proposed enforcement mechanisms were likely to be effective.  *Id.* at 40659.  The EPA provided thirty days for the public to comment on its proposed approval of the Regulation.  Neither the Truck Association nor any other individual or group commented on the proposed rule.  Final Rule, Approval and Promulgation of Implementations Plans, 77 Fed. Reg. 20308, 20312 (Apr. 4, 2012) (to be codified at 40 C.F.R. pt. 52).  On April 4, 2012, the EPA took final action approving the Regulation as part of California's SIP.  In its notice of this action, the EPA reaffirmed its prior conclusion that the Regulation complied with the substantive and procedural requirements of the CAA.  *Id.* at 20311, 20313.  The final rule took effect on May 4, 2012, and the Regulation was incorporated into California's SIP in the Code of Federal Regulations.  40 C.F.R. § 52.220(410) (incorporating by reference the Regulation, Cal. Code Regs. tit. 13, § 2025).

On May 24, 2012, while the parties' summary judgment motions remained pending, the NRDC filed a notice of supplemental authority informing the district court of the EPA's approval of the Regulation as part of California's SIP.  At the court's request, the parties submitted briefing on whether the EPA's action affected the posture of the case.  On December 19, 2012, the court dismissed the suit, finding that it no longer had subject matter jurisdiction under § 307(b)(1) of the CAA.  It further found that, even if it retained jurisdiction, dismissal was proper under Federal

Rule of Civil Procedure 19 because the EPA was a necessary and indispensable party.  The Truck Association appealed both grounds for the district court's dismissal.

Shortly after filing this appeal, the Truck Association separately filed a petition in this Court under § 307(b)(1) and Rule 15(a) of the Federal Rules of Appellate Procedure, seeking review of the EPA's approval of the Regulation. Petition for Review, *Cal. Constr. Trucking Ass'n v. EPA*, No. 13-70562 (9th Cir. 2013).  We dismissed the petition as untimely because it was not filed within sixty days of the EPA's notice of final rule, as required by § 307(b)(1).  Order, *Cal. Constr. Trucking Ass'n*, No. 13-70562.  The Truck Association also filed a petition with the EPA requesting reconsideration of its approval of the Regulation.

## II.  Analysis

We review a district court's dismissal of a complaint for lack of subject matter jurisdiction *de novo*.  *Carolina Cas. Ins. Co. v. Team Equip., Inc.*, 741 F.3d 1082, 1086 (9th Cir. 2014).

Section 307(b)(1) of the CAA states:

> A petition for review of the [EPA] Administrator's action in approving or promulgating any implementation plan . . . or any other final action of the Administrator under this chapter . . . which is locally or regionally applicable may be filed *only* in the United States Court of Appeals for the appropriate circuit.

42 U.S.C. § 7607(b)(1) (emphasis added). As a result, "invalidation of an EPA-approved SIP may only occur in the federal appellate courts on direct appeal from the Administrator's decision." *United States v. Ford Motor Co.*, 814 F.2d 1099, 1103 (6th Cir. 1987); *see also Sierra Club v. Ind.-Ky. Elec. Corp.*, 716 F.2d 1145, 1152 (7th Cir. 1983) ("Once a plan is adopted by the state and it *withstands any subsequent procedural challenge*, then § 7607(b)(1) provides that invalidation may occur only in the federal appellate courts.").

The Truck Association, however, argues that it is not challenging the SIP, or the EPA's approval thereof. It claims that its suit, which it filed before the EPA's final action approving the Regulation as part of California's SIP, challenges only the state Regulation, which is distinct from the federal SIP. The Truck Association contends that invalidating the Regulation would render it unenforceable by CARB, but "would not prohibit enforcement of the SIP" by the EPA and private citizens. Truck Association members would still purportedly benefit from the Regulation's invalidation because of the "enormous difference in the enforcement mechanisms between the state regulation and the federalized SIP." Specifically, the Truck Association points out that under the CAA, citizen suits may not be commenced without first providing the alleged violator with sixty days' notice.[5] 42 U.S.C. § 7604(b)(1). By contrast, no

---

[5] The Truck Association does not discuss whether a similar grace period exists before the EPA can take enforcement action. However, it appears that the EPA must wait at least thirty days before taking action to enforce

such limitation is placed on CARB's enforcement of the Regulation. Under California's Health and Safety Code, violators are liable for civil penalties of up to $1,000 per day as well as criminal sanctions, with each day of violation constituting a separate offense. Cal. Health & Safety Code §§ 39674, 42400. Were the Regulation nullified, violators would have sixty days to take corrective action, saving them from potentially $60,000 in penalties and sixty criminal offenses. And, "[a]s a practical matter," the Truck Association contends, most of its members would not have to comply with the SIP for "months or years" until their noncompliance was discovered by someone willing to pursue the "relatively cumbersome" process of bringing a citizen suit. The Truck Association concludes that, because it is challenging only the Regulation and not the SIP, § 307(b)(1) does not apply.[6] For the reasons discussed herein, we disagree.

---

a SIP. *See Luminant Generation Co., LLC v. EPA*, 757 F.3d 439, 442 (5th Cir. 2014) ("After giving notice and waiting thirty days, the EPA may 'issue an order,' 'issue an administrative penalty' after a formal administrative hearing, or 'bring a civil action.'" (quoting 42 U.S.C. § 7413 (a)(1))).

[6] In its opening brief, the Truck Association argues at length that an approved SIP does not have the "force and effect of federal law," and instead may simply be enforced by the EPA in federal court. This argument, for which the Truck Association cites no case law, is based on the fact that the CAA provision providing for federal enforcement does not contain the language "force and effect of federal law." 42 U.S.C. § 7413. This is insufficient to disturb our precedent, which has consistently recognized that an approved SIP is federal law. *See, e.g.*, *Safe Air*, 488 F.3d at 1091; *Natural Res. Def. Council, Inc. v. S. Coast*

## A.  Scope of § 307(b)(1)

The Truck Association relies heavily on the fact that its complaint, on its face, does not challenge an EPA action or California's SIP.  However, jurisdiction under § 307(b)(1) is not established solely by the allegations on the face of a complaint; instead, § 307(b)(1) "channels review of final EPA action exclusively to the courts of appeals, *regardless of how the grounds for review are framed*."  *Virginia v. United States*, 74 F.3d 517, 523 (4th Cir. 1996) (emphasis added).  Thus, § 307(b)(1) has been applied to claims that *effectively*, if not facially, challenged an EPA final action.

In *Virginia v. United States*, for example, the Fourth Circuit held that § 307(b)(1) applied to Virginia's claim that provisions of the CAA were "unconstitutional on their face."  *Virginia*, 74 F.3d at 522.  After the EPA took final action

---

*Air Quality Mgmt. Dist.*, 651 F.3d 1066, 1069 (9th Cir. 2011); *El Comité Para El Bienestar de Earlimart v. Warmerdam*, 539 F.3d 1062, 1066 (9th Cir. 2008).  We are joined in this view by other circuits.  *See, e.g.*, *GenOn REMA, LLC v. EPA*, 722 F.3d 513, 516 (3rd Cir. 2013) ("If the EPA approves the SIPs, they become enforceable as federal law."); *US Magnesium, LLC v. EPA*, 690 F.3d 1157, 1159 (10th Cir. 2012) ("Approved SIPs are enforceable as federal law . . . ."); *Her Majesty the Queen in Right of the Province of Ont. v. City of Detroit*, 874 F.2d 332, 335 (6th Cir. 1989) ("If a state implementation plan ('SIP') is approved by the EPA, its requirements become federal law and are fully enforceable in federal court.").  Furthermore, the Truck Association's ultimate point appears to be that even after EPA approval, there remains "a state regulation on the books that is subject to preemption," a point that Appellees do not contest, and that is not relevant to the question of jurisdiction under § 307(b)(1).

finding deficiencies in Virginia's pollution programs, Virginia filed suit in district court alleging that the CAA sanctions that would be triggered by the EPA's actions were unconstitutional. Virginia sought an injunction preventing the EPA from enforcing those sanctions. The district court dismissed Virginia's suit under § 307(b)(1), and the Fourth Circuit affirmed. The Fourth Circuit explained that "the *practical objective* of the complaint [was] to nullify final actions of EPA," and held that Virginia could not "circumvent direct review in the circuit court" by "framing its complaint as a constitutional challenge to the CAA." *Id.* at 522–23 (emphasis added).[7]

---

[7] In its Reply brief, the Truck Association argues that *Virginia*'s holding was subsequently limited in *North Carolina ex rel. Cooper v. Tennessee Valley Authority*, 549 F. Supp. 2d 725 (W.D.N.C. 2008). Apart from the fact that a district court cannot "limit" the holding of a court of appeals decision, the Truck Association's reliance on this case, which ultimately favors Appellees, is misguided. North Carolina had filed a public nuisance suit against the Tennessee Valley Authority (TVA) based on emissions from TVA's power plants located in Tennessee, Alabama, and Kentucky. *Id.* at 727. North Carolina had separately filed a petition with the EPA under the CAA seeking emissions reductions from TVA's power plants in thirteen states. The district court found that the two actions could proceed simultaneously because North Carolina's public nuisance suit was brought on different grounds than its EPA petition. *Id.* at 734. The court distinguished *Virginia*, finding no indication that North Carolina's "practical objective" was to "'nullify' the EPA's final action." *Id*. Following a bench trial, TVA was found liable and appealed. As noted in CARB's citation of supplemental authorities, the Fourth Circuit reversed the district court's judgment. Among other reasons, the court explained that preemption considerations disfavored litigation such as North Carolina's suit, as it amounted to "'nothing more than a collateral attack'" on the system created by the CAA and "risk[ed] results that lack

The Eighth Circuit reached a similar conclusion in *Missouri v. United States*, 109 F.3d 440 (8th Cir. 1997). There, Missouri challenged the constitutionality of the CAA's sanctions scheme after the EPA found Missouri to be noncompliant with the CAA. The Eighth Circuit held that § 307(b)(1) applied to Missouri's suit, stating:

> While it is true that Missouri's complaint questions the constitutionality of the overall sanctions scheme of the CAA, this challenge is not separate and apart from EPA action. . . . Those sanctions flow directly from EPA action, originating in EPA's declaring the St. Louis area an "ozone nonattainment area."

*Id.* at 442.

In *New England Legal Foundation v. Costle*, 666 F.2d 30 (2d Cir. 1981), the Second Circuit found § 307(b)(1) to apply to a common law nuisance suit. The plaintiff had sued a lighting company for burning high-sulfur oil, conduct the EPA had approved as a variance to New York's SIP. *Id.* at 31–32 & n.1. The Second Circuit found the nuisance claim was "in effect, an attack upon the validity of the EPA-approved variance," and held that "[a]ll claims against the validity of performance standards approved by final decision

---

both clarity and legitimacy." *North Carolina ex rel. Cooper v. Tenn. Valley Auth.*, 615 F.3d 291, 301 (4th Cir. 2010) (quoting *Palumbo v. Waste Techs. Indus.*, 989 F.2d 156, 159 (4th Cir. 1993)). Thus, not only does *North Carolina* not cabin *Virginia*, it in fact favors Appellees by discouraging litigation that seeks to "scuttle the extensive system of anti-pollution mandates that promote clean air in this country." *Id.* at 298.

of the Administrator must be addressed to the courts of appeals on direct appeal." *Id.* at 33 (internal quotation marks and citation omitted).

Finally, in *Benning v. Browner*, No. Civ.A. 97-CV-7058, 1998 WL 717436 (E.D. Pa. Sept. 24, 1998), the court applied the reasoning of *Virginia* and *Missouri* to a suit alleging that a regulation incorporated into Pennsylvania's SIP violated the Equal Protection Clause. The court found the plaintiffs were "essentially challenging the appropriateness of the EPA Administrator's action in approving a regulation they believe to be unconstitutional." *Id.* at *3. It concluded that the plaintiffs' "practical objective [was] to nullify the EPA's final action," and dismissed the suit under § 307(b)(1).

These cases demonstrate that a claim need not be framed as a challenge to the EPA for § 307(b)(1) to apply. Instead, § 307(b)(1)'s scope extends to claims that, as a practical matter, challenge an EPA final action, including its approval of a SIP.[8] As explained below, we find that the Truck

---

[8] To some extent, this Court's decision in *Natural Resources Defense Council, Inc. v. South Coast Air Quality Management District*, 651 F.3d 1066 (9th Cir. 2011), also supports the proposition that § 307(b)(1) looks beyond the face of a complaint. There, the EPA had approved the SIP for the South Coast Air Basin. The SIP included a program that allowed new sources of pollution to obtain emissions offset credits from the South Coast Air Quality Management District (SCAQMD), which implemented the SIP. *Id.* at 1069. In approving the SIP, the EPA had found that SCAQMD's credits complied with the CAA. *Id.* at 1070–71. Several years later, the NRDC filed suit in district court alleging that the credits did not comply with the CAA. The district court dismissed the claim under § 307(b)(1). *Id.* at 1069. On appeal, the NRDC argued that

Association's suit, as a practical matter, challenges the EPA's approval of a provision of California's SIP.

## B.  The Truck Association's Suit

The Truck Association seeks to enjoin CARB from enforcing the Regulation, which the Association alleges is preempted by federal law.  However, the EPA's approval of the Regulation made it part of California's SIP, and the SIP's effectiveness depends largely on its enforcement by the state.  Enjoining enforcement of the Regulation by CARB would effectively nullify that provision of California's SIP.  Furthermore, in alleging that the Regulation is preempted, the Truck Association is also effectively challenging the EPA's determination that federal law does not prohibit the Regulation.  Thus, while the Truck Association had no "secret intent" of challenging the EPA when it filed suit, and it does not now seek to prohibit the EPA's enforcement of the SIP, the practical, and therefore legal, effect of the Truck Association's suit is to challenge both the EPA and the SIP.

### 1.  Challenge to CARB's Enforcement of the SIP

While the Truck Association asserts that "[t]he validity of the SIP is not at issue," its suit, if successful, would

---

it was "not challenging the EPA's approval of the SIP, but rather SCAQMD's implementation of the SIP."  *Id.* at 1071.  We rejected that argument, explaining that "because the EPA issued rules that not only approved the SIP but also indicated that the credits . . . comply with [the CAA], the NRDC is effectively seeking review of the EPA's decision."  *Id.*  Thus, *SCAQMD* also favors applying § 307(b)(1) based on the practical objective of a claim.

effectively eviscerate the SIP by precluding its enforcement by CARB.  As we have previously observed, "[t]he [CAA] places much of its *enforcement burden on the states*, which are required to submit SIPs that show how states will attain the standards for major air pollutants."  *El Comité Para El Bienestar de Earlimart v. Warmerdam*, 539 F.3d 1062, 1066 (9th Cir. 2008) (emphasis added); *see also Safe Air*, 488 F.3d at 1092 ("[T]he CAA establishes a system heavily dependent upon state participation."); *Ford*, 814 F.2d at 1102 ("[T]he Clean Air Act contemplates very significant participation in air pollution control by state air pollution control agencies . . . .").  Thus, a SIP must contain "enforceable" emissions limitations and assurances that the *state* has sufficient authority and resources to carry out the SIP.  42 U.S.C. § 7410(a)(2)(A), (E).

Indeed, the EPA approved the Regulation in part because it concluded that CARB could effectively enforce it.  The EPA stated:

> CARB intends to conduct enforcement of the . . . Regulation . . . similarly to enforcement of CARB's commercial vehicle and school bus idling regulations. CARB's enforcement staff intends to use the inspection and audit methods that they have developed during the many years of experience enforcing the Heavy-Duty Vehicle Inspection Program (adopted into law in 1988) and the Periodic Smoke Inspection Program (adopted into law in 1990).

CARB indicates that enforcement activities will include inspections at border crossings, California Highway Patrol (CHP) weigh stations, fleet facilities, and randomly selected roadside locations and audits of records. . . . **These activities could result in corrective actions and substantial civil penalties for non-compliance with the regulations**. . . .

We recognize the general effectiveness of CARB's motor vehicle enforcement program and **expect CARB's approach to enforcement of the . . . [R]egulation[]**, as described above, to be **equally effective** . . . .

76 Fed. Reg. 40659 (emphasis added). Clearly, the SIP's effectiveness in attaining the EPA's NAAQS is directly tied to its enforceability by CARB, and would be vitiated if such enforcement were enjoined.

Furthermore, the Truck Association's assertion that it is not challenging the SIP is belied by its acknowledgment that the invalidation of the state Regulation that it desires would make the SIP's enforcement more difficult, and that such circumstances would be beneficial to its members. While touting the continued viability of the SIP via EPA actions and citizen suits, the Truck Association readily admits that such enforcement will be largely ineffective, with SIP violations likely to go undetected for months if not years. Thus, if successful, the Truck Association's suit would severely undermine the SIP's ability to achieve federal air quality standards. Because the Truck Association's practical

objective is to dismantle the SIP's primary enforcement apparatus, its suit is subject to § 307(b)(1) and must be brought in this Court.[9]

The Truck Association argues that there is some precedent for a non-appellate court repealing a state regulation that is incorporated into a SIP. The Truck Association points to *Sierra Club v. Indiana-Kentucky Electric Corp.*, 716 F.2d 1145 (7th Cir. 1983), where the Seventh Circuit considered the enforceability of a SIP provision whose underlying state regulation had been invalidated in state court on state law procedural grounds. *Id.* at 1146. An Indiana court had found the SIP provision invalid because the "state officer who presided over the hearing [on the regulation] had failed to submit written

---

[9] In addition to having the practical effect of nullifying the SIP, the Truck Association's suit arguably seeks to literally repeal a portion of the SIP. California's SIP, codified at 40 C.F.R. § 52.220, does not set forth the requirements of the Regulation; instead, it incorporates the Regulation "by reference." *Id.* § 52.220(410). Thus, if the Regulation were repealed, there would arguably be nothing for the SIP to incorporate. Indeed, it could be persuasively argued that the repeal of a state regulation necessarily repeals part of the corresponding SIP, as a SIP is composed of state regulations. As explained by the EPA in its notice of final rule:

> [I]n reviewing SIP submissions, EPA's role is to approve State choices, provided that they meet the criteria of the Clean Air Act. Accordingly, this proposed action merely approves State law as meeting Federal requirements and does not impose additional requirements beyond those imposed by State law.

77 Fed. Reg. at 20313.

findings to the Indiana Environmental Management Board," as required by Indiana law. *Id.* at 1147. The Seventh Circuit held that, in light of the state court's ruling, the SIP provision was not enforceable, reasoning:

> Because administrative actions taken without substantial compliance with applicable procedures are invalid, it is as if Indiana never submitted [the state regulation]. Since a valid [regulation] was never submitted, EPA's adoption of [the regulation] cannot be given effect since EPA approved a provision which was invalid when submitted to the agency.

*Id.* at 1148.

Even if we were to agree with the Seventh Circuit that a SIP provision may be invalidated in state court on state procedural grounds, this would not help the Truck Association, whose suit does not raise a state law procedural challenge. And, as explained by the Seventh Circuit, "[o]nce a plan is adopted by the state and it *withstands any subsequent procedural challenge*, then § 7607(b)(1) [CAA § 307(b)(1)] provides that invalidation may occur only in the federal appellate courts." *Id.* at 1152. Thus, if anything, *Sierra Club* supports the application of § 307(b)(1) to the Truck Association's suit.

*United States v. Ford Motor Co.*, 814 F.2d 1099 (6th Cir. 1987), similarly acknowledged the very limited circumstances in which a SIP may be invalidated by a state court. There, the EPA had sued Ford in district court for

violations of Michigan's SIP, and Ford subsequently filed suit in Michigan state court to enjoin state environmental agencies from enforcing the SIP. Ford and the state agencies negotiated a consent judgment purporting to vacate the SIP, and Ford sought to use the consent judgment to defeat the EPA's enforcement action. *Id.* at 1101. The Sixth Circuit held that the consent judgment did not preclude EPA's enforcement of the SIP because "revisions of State Implementation Plans are ineffective until approved by EPA," and "invalidation of an EPA-approved SIP may only occur in the federal appellate courts" under § 307(b)(1). *Id.* at 1102–03. The Sixth Circuit distinguished *Sierra Club*, noting that Ford's challenge to the SIP was not based on procedural grounds. *Id.* at 1103.

The Sixth Circuit did not address whether the consent judgment could preclude enforcement of the SIP by state agencies. If it could, *Ford* would arguably support the Truck Association's assertion that a non-appellate court may render a SIP unenforceable by the state. However, the court in *Ford* was not confronted with this question. To the extent that any inferences can be drawn from the opinion, they would favor Appellees, as the Sixth Circuit stated, "invalidation of a SIP on technical grounds by a state court . . . . *cannot be given effect*." *Id.* at 1103 (emphasis added). Presumably, this admonition applied to both the EPA and the state agencies. Thus, *Sierra Club* and *Ford* do not detract

from the analysis supporting this Court's exclusive jurisdiction over the Truck Association's claim.[10]

### 2. *Challenge to the EPA's Legal Determination*

It is also clear that jurisdiction for the Truck Association's claim exists exclusively under § 307(b)(1) because the Truck Association's preemption claim effectively challenges the EPA's legal determination that federal law does not prohibit the Regulation. When the EPA proposed approving the Regulation, it explicitly stated that it knew of "no obstacle under Federal or State law in CARB's ability to implement" the Regulation. 76 Fed. Reg. at 40658. The EPA reiterated this conclusion in its final approval, finding that the state had provided adequate

---

[10] The parties cite *New Mexico Environmental Improvement Division v. Thomas*, 789 F.2d 825 (10th Cir. 1986), for the proposition that "[w]hen the approved SIP contains an element that is invalidated by virtue of state law, adoption by the EPA is also invalidated." *Id.* at 833. This decision, however, is of limited help to either side. In *New Mexico*, a state regulation approved into New Mexico's SIP was subsequently invalidated by New Mexico's Supreme Court for violating a state law prohibiting counties from requiring vehicle registrations. *Id.* at 828 & n.1. The issue before the court was whether the EPA reasonably concluded that New Mexico had failed to submit a valid SIP. In its deferential agency review, the Tenth Circuit found that the EPA acted reasonably, noting that *Sierra Club* lent support for the EPA's theory that when a state submits a SIP that is invalid under state law, it "is as if the state had not submitted a SIP" at all." *Id.* at 833. The court had no occasion to consider whether New Mexico's Supreme Court had jurisdiction to invalidate the state regulation.

assurances that it was not prohibited from carrying out the Regulation by "any provision of Federal or State law." 77 Fed. Reg. 20311, 20313.  In alleging that the Regulation violates the Supremacy Clause because it is preempted by the FAAAA, the Truck Association effectively challenges the validity of the EPA's determination.  *See New England Legal Found.*, 666 F.2d at 33.  Under § 307(b)(1), such a challenge must be brought in this Court.  *See Virginia*, 74 F.3d at 523 (explaining that appellate courts' exclusive jurisdiction extends to "'legal issues *pertaining* to final [actions]—whether or not those issues arise from the statutes that authorized the agency action in the first place'") (alteration in original) (emphasis added) (quoting *Palumbo v. Waste Techs. Indus.*, 989 F.2d 156, 161 (4th Cir.1993)). [11]

In sum, the practical objective of the Truck Association's preemption suit is to nullify the SIP and challenge the EPA's legal determination regarding its validity.  Thus, it is the type of action to which § 307(b)(1) applies.  Although this case is somewhat unique, in that the EPA approved the SIP after the Truck Association filed suit, subsequent EPA action can divest a district court of jurisdiction.  *See City of Seabrook v. Costle*, 659 F.2d 1371, 1373 (5th Cir. 1981) ("Even if we assume . . . that the district court had jurisdiction of plaintiffs' claim . . . the publication of the 'final rule' clearly left the district court without jurisdiction of the claim [under

---

[11] Admittedly, it is not clear from the EPA's public notices whether it specifically considered preemption under the FAAAA.  To the extent that it did not, this is at least somewhat attributable to the Truck Association's failure to comment on the EPA's proposed rule.  In any event, the Truck Association effectively challenges the EPA's broader conclusion that the Regulation complies with federal law.

§ 307(b)(1)].");  *see also Douglas v. Indep. Living Ctr. of S. Cal., Inc.*, 132 S. Ct. 1204, 1210 (2012) (explaining that respondents' Supremacy Clause challenges to state regulations were in a "different posture" after federal agency approved the regulations, potentially requiring respondents to instead seek review of agency action).  Furthermore, the Truck Association provides no persuasive reason why § 307(b)(1) cannot apply to a regulation that was adopted to be incorporated into a state's SIP, simply because suit was filed prior to the EPA's final action.  Indeed, policy considerations underlying the CAA mandate this precise result.

## C.  Policy and Fairness Considerations

In establishing the CAA's jurisdictional scheme, "Congress wanted speedy review of EPA rules and final actions in a single court," thereby avoiding "duplicative or piecemeal litigation, and the risk of contradictory decisions." *Virginia*, 74 F.3d at 525 (internal quotation marks and citation omitted); *see also Harrison v. PPG Indus., Inc.*, 446 U.S. 578, 593 (1980) ("The most obvious advantage of direct review by a court of appeals is the time saved compared to review by a district court, followed by a second review on appeal.").  Allowing the Truck Association's suit to proceed in district court would undermine these policy objectives. The district court's decision on whether the Regulation is preempted would be subject to appeal, during which time the enforceability of the SIP would be in limbo.  This would frustrate Congress's goal of having prompt and final review of decisions regarding SIPs.  Moreover, even if the Truck Association successfully enjoined enforcement of the Regulation by CARB, a separate suit would be required to

enjoin enforcement by the EPA and private citizens, potentially resulting in re-litigation of the same issues in multiple courts, with the concomitant risk of conflicting decisions. Indeed, the Truck Association admitted to the district court that it "may challenge the approval of the SIP . . . in a different forum . . . on similar or different grounds," and it subsequently did bring such other challenges.[12] Applying § 307(b)(1) to the Truck Association's suit avoids these outcomes and furthers the goals underlying the CAA's judicial review system.

The Supreme Court's analysis in *Douglas v. Independent Living Center of Southern California, Inc.*, 132 S. Ct. 1204 (2012) supports this conclusion. In *Douglas*, Medicaid providers and beneficiaries brought suit under the Supremacy Clause alleging that California's Medicaid statutes conflicted with, and were preempted by, federal Medicaid law. After the Supreme Court granted certiorari, the federal agency responsible for administering the Medicaid program approved the state statutes, having determined that they complied with federal law. *Id.* at 1208–09. The Supreme Court found that as a result of the agency's approval, the case was "now in a different posture" and "may require respondents now to proceed by seeking review of the agency determination under the Administrative Procedure Act rather than in an action against California under the

---

[12] After the district court dismissed its suit, the Truck Association filed a petition in this Court under § 307(b)(1), seeking review of the EPA's approval of the Regulation. Although we dismissed that suit as untimely, thereby mitigating the risk of conflicting decisions, allowing the Truck Association's district court suit to proceed would create precedent for such piecemeal litigation.

Supremacy Clause." *Id.* at 1210 (citation omitted). Among the Court's considerations was that:

> [T]o allow a Supremacy Clause action to proceed once the agency has reached a decision threatens potential inconsistency or confusion.
>
> . . .
>
> . . . Indeed, to permit a difference in result [depending upon whether the case proceeds in a Supremacy Clause action rather than under the APA] would subject the States to conflicting interpretations of federal law by several different courts (and the agency), thereby threatening to defeat the uniformity that Congress intended by centralizing administration of the federal program in the agency and to make superfluous or to undermine traditional APA review. If the two kinds of actions should reach the same result, the Supremacy Clause challenge is at best redundant. And to permit the continuation of the action in that form would seem to be inefficient, for the agency is not a participant in the pending litigation below, litigation that will decide whether the agency-approved state rates violate the federal statute.

*Id.* at 1210–11 (citation omitted). Similarly, here, the EPA's approval of the Regulation has changed the posture of the case, such that a different avenue of judicial review is appropriate to avoid potentially conflicting decisions on the

underlying question of whether the Regulation is preempted by the FAAAA.  Moreover, proceeding under § 307(b)(1) is preferable because the EPA would be a party to litigation that would decide whether a regulation it approved violates federal law.

The Truck Association correctly notes that the instant case differs from *Douglas* in that the EPA does not administer the FAAAA.  Thus, the EPA's determination that the Regulation does not conflict with federal law may not be the "kind of legal question that ordinarily calls for APA review," because it does not fall within the EPA's expertise. *Douglas*, 132 S. Ct. at 1210.  Nevertheless, the congressional interests in uniformity and finality discussed in *Douglas* apply here with equal force, and are better served by requiring challenges such as the Truck Association's to be heard in this Court.

Finally, the Truck Association argues that applying § 307(b)(1) to its suit would be unfair and leave it with no forum in which to pursue its claim.  The Truck Association points out that when it filed suit, jurisdiction in this Court was unavailable because the EPA had not taken final action on the Regulation.  Requiring the Truck Association to *wait* for final action would mean that it could not enjoin the Regulation from taking effect, thereby imposing heavy costs on its members, as the EPA did not approve the Regulation until several months after it became effective.  Furthermore, the Truck Association argues, dismissing its suit on jurisdictional grounds would unfairly penalize it for the district court's delay in rendering a decision.  According to the Truck Association, had the court adjudicated the case promptly, "judgment likely would have predated the EPA

action."  Lastly, though not raised by the Truck Association, the district court's dismissal of the Association's suit eight months after the EPA's final action arguably prejudiced the Association because by then, the sixty-day window in which it could seek review in this Court under § 307(b)(1) had closed, leaving the Association with no court in which to bring its claim.

These arguments, though somewhat sympathetic, are ultimately unpersuasive.  The Truck Association is mistaken that § 307(b)(1)'s application would deny it a forum in which to enjoin the Regulation's implementation.   The Truck Association properly sought such relief in the district court, and indeed that court considered and ruled upon its motion for a preliminary injunction.  The Truck Association may be correct that it would not have been subject to § 307(b)(1) had the district court reached an earlier disposition on its preemption claim.  However, nothing inhibited the Truck Association from timely pursuing that claim in this Court after the EPA approved the Regulation in April 2012.  The fact that it did not, and is now time-barred from doing so, is the Truck Association's own doing.[13]

---

[13] We also note that although 28 U.S.C. § 1631 provides for transfer of cases when the original court lacked jurisdiction, but the transferee court would have had jurisdiction at the time the complaint was filed, this statute does not apply here. At the time the Truck Association filed its complaint, this court did not have jurisdiction over the case, because the EPA had not yet approved the Regulation as part of California's SIP. Only when the EPA later took final action in approving the Regulation as part of California's SIP  well after the complaint was filed  did this court gain jurisdiction pursuant to § 307(b)(1). Because we would not

Moreover, any unfairness to the Truck Association is further mitigated by the fact that it was on notice, from the Regulation's inception, that the Regulation was intended to be incorporated into California's SIP.  When CARB first proposed adopting the Regulation, it issued a public notice explaining that "[t]he [CAA] requires U.S. EPA to establish NAAQS for pollutants," that "Federal law mandates the development of State Implementation Plans documenting the actions the state will take to attain the federal air quality standards," that CARB's "SIP submittals to U.S. EPA . . . adopted 2014 reduction commitments for both [ozone] and PM[]," and that "the proposed regulation would provide the necessary emissions reductions by the mandatory deadlines for meeting the NAAQS for PM[] and ozone."[14]   After CARB submitted the Regulation to the EPA, and several months before it was to take effect, the EPA issued a public notice proposing to approve the Regulation and inviting comments on its proposal.  Thus, from multiple sources, the Truck Association was on notice that it could have participated in the administrative approval process by

---

have been able to exercise jurisdiction on the date the case was filed in the district court, which is one of the requirements of § 1631, we could not have transferred the case to this court under that statute.

[14] James N. Goldstene, Cal. Air Res. Bd., *Notice of Public Hearing to Consider the Adoption of a Proposed Regulation to Reduce Emissions from In-Use On-Road Diesel Vehicles, and Amendments to the Regulations for In-Use Off Road Vehicles, Drayage Trucks, Municipality and Utility Vehicles, Mobile Cargo Handling Equipment, Portable Engines and Equipment, Heavy duty Engines and Vehicle Exhaust Emissions Standards and Test Procedures and Commercial Motor Vehicle Idling* 3–5 (2008), *available at* www.arb.ca.gov/ regact/2008/truckbus08/tbnotice.pdf.

submitting comments to the EPA. However, it chose not to do so. Under these circumstances, it cannot be said that the Truck Association has been unfairly prejudiced.

## III.     Conclusion

For these reasons, we affirm the district court's dismissal for lack of subject matter jurisdiction under CAA § 307(b)(1).

**AFFIRMED.**